COMMONWEALTH *vs.* JAMES H. HUDSON.

Plymouth.    February 25, 1904. — April 1, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & BRALEY, JJ.

*Evidence,* Admissions and Confessions, Remoteness.  *Arson.*

</div>

At a trial for wilfully and maliciously setting fire to a barn by the burning whereof a dwelling house also was burned, the defendant contended that the presiding judge was not warranted by the evidence on the *voir dire* in admitting a certain confession as voluntary. It appeared, that before the confession a deputy sheriff said to the defendant when four other officers were present "If you are not guilty, don't you think you had better tell the truth?" Whereupon an assistant fire marshal, who had been questioning the defendant, told him that he offered him no inducement for anything he had a mind to say about the matter, that whatever he said must be of his own free will, and that he offered him "no hope or favor whatever." *Held,* that the judge was warranted in admitting the confession as voluntary.

At a trial for wilfully and maliciously setting fire to a barn, the owner of the building, called as a witness by the Commonwealth, was asked by the defendant on cross-examination, whether tramps were in the habit of going into the loft of the barn. The presiding judge excluded the question. *Held,* that the exclusion of the question as calling for matters too remote was a proper exercise of the discretion of the presiding judge.

At a trial for wilfully and maliciously setting fire to a barn, by the burning of which
a dwelling house also was burned, the owner of the building, called as a witness
by the Commonwealth, testified in his direct examination that the buildings de-
stroyed by fire were insured for $3,500, and that they had cost $3,850. The
defendant offered evidence tending to show that the buildings cost much less
than the sum named, for the purpose of showing that a person other than the
defendant had a strong motive for setting fire to the buildings, and also for the
purpose of impeaching the witness. The presiding judge excluded the evidence.
*Held,* that the exclusion of the evidence, as too remote in its bearing either upon
the guilt of the defendant or the credibility of the witness, was a proper exercise
of the discretion of the presiding judge.

INDICTMENT, found and returned in the Superior Court for
the county of Plymouth on October 27, 1902, for wilfully and
maliciously, on August 20, 1902, setting fire to a barn of one
Charles W. Smith, by the burning whereof the dwelling house
of Smith also was burned.

In the Superior Court the case was tried before *Harris,* J.
The Commonwealth offered to prove by one John H. Scott, an
assistant fire marshal, and one Albert I. Simmons, a deputy
sheriff, that the defendant made a confession to them, three
other officers being present at the time. The jury being with-
drawn, the judge heard the evidence in relation to the conversa-
tion leading up to the confession. Scott testified, among other
things, as follows:

"Then I said, 'Do you expect me to believe such a story as
that? That is about as correct as most of the stories you have
told me. Every story that you have told me you have contra-
dicted it. Now, why don't you go on and tell it just exactly as
it was? [Pausing]. I want to get it exactly as it is, because
here is the important part of it.' [Pause.] I says, 'Why don't
you go on and tell me exactly as it is? Don't you think that
the truth is better than a lie?' Right here Mr. Simmons says —
*Q.* Now, just a moment. Did he make any reply to that?
*A.* He did not. Oh! he says, 'I will.' Yes, he says, 'I will.'
But he didn't. Mr. Simmons says then: 'The Marshal has
the evidence in the case and knows all about it. Why don't
you go on and tell him just as it was? Of course it is not my
place to advise you. If you are not guilty don't you think that
the truth is better, — that you had better tell the truth?' —
*Q.* If you are not guilty, don't you think you had better tell
the truth? *A.* 'Yes.' — *Q.* Those are the words as you recall

them? *A.* 'If you are not guilty, don't you think you had better tell the truth?' Then I said, 'Gentlemen, I want you to understand, and I want him to distinctly understand that I offer him no inducement whatever for anything he has a mind to say about this matter. Whatever he does say, and whatever he tells, must be of his own free will: I offer him no hope or favor whatever.' — *Q.* Then he went on and told you something else, did he? *A.* Then I asked him a question. [Pausing.] — *Q.* Now, what did you ask him? *A.* I want to get that exactly, just right there. [Pausing.] I asked him if when he lit that match, he did not touch it to the hay, and he said he did. I asked him if he saw the hay blaze up and he said that he did. I asked him what he did then, and he said he left the barn and went down there, to his house, and got his wheel and rode to Whitcomb's bicycle shop and got his bicycle repaired, and on his way home the fire was discovered. I asked him what his motive was in setting that fire, and he said he did not know. I asked him if Mr. Smith wasn't a friend of his, and he said 'Yes.'"

In charging the jury as to the alleged confession, the judge instructed them in substance as follows: "The question whether or not the confession is obtained by means of the making of threats, or the holding out of inducements by the officer, is one to be passed upon primarily by the court. If the court is satisfied that the confession was obtained by means of such threat or inducement, it is his duty to exclude it, but if he is not satisfied that it was so obtained, or there is contradictory evidence upon that question, he should submit the evidence to the jury and in this case I submit the evidence to you, and if you find that the alleged confession was obtained either by threat or inducement, you should disregard it altogether; if on the other hand, you find that it was not so obtained, then you have a right to consider it as evidence, giving to it such weight as you think it ought to have."

At the trial, Charles A. Smith, the alleged owner of the building, was called by the Commonwealth as a witness. On cross-examination, the defendant's counsel asked him, for the purpose of showing that some person other than the defendant might have been the cause of setting the fire, "Was there any indication that tramps had been in your loft?" The question being

objected to, the judge said to the defendant's counsel, "Do you mean on that day, or do you mean that as a general question, covering all times?" The counsel replied, "Yes, supposing I put it as a general question: If tramps were in the habit of going into his loft?" The judge excluded the question. The defendant then asked the question: "Well, about the time this fire occurred, Mr. Smith, was there any indication that tramps had been in your loft, very near that time?" It appeared that at the time the fire occurred the witness was out of town. The judge excluded the question.

The same witness testified on direct examination that the buildings were insured for $3,500, and that they cost $3,850. The defendant offered evidence tending to show that the buildings cost much less than the sum named, with a view of showing that some person other than the defendant had a strong motive for setting the buildings on fire, and for the purpose of impeaching the credibility of the witness. The judge excluded the evidence.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. A. McLellan,* for the defendant.

*Asa P. French,* District Attorney, for the Commonwealth.

HAMMOND, J. 1. "When a confession is offered in evidence, the question whether it is voluntary is to be decided primarily by the presiding justice. If he is satisfied that it is voluntary, it is admissible; otherwise, it should be excluded. When there is conflicting testimony, the humane practice in this Commonwealth is for the judge, if he decides that it is admissible, to instruct the jury that they may consider all the evidence, and that they should exclude the confession, if, upon the whole evidence in the case, they are satisfied that it was not the voluntary act of the defendant." Morton, J. in *Commonwealth* v. *Preece,* 140 Mass. 276, 277, citing cases. That practice was followed in the present case; and the question is whether the evidence on the *voir dire* warranted the judge in coming to the conclusion that the confession was voluntary. While it may be true that when an arresting officer tells his prisoner that he "had better tell the truth," the general rule is that the confession is inadmissible, still, after all, the real question in any case

is whether such or similar language, when taken in connection with the attending circumstances and with other language spoken in the same or some prior interview, shows that the confession was made under the influence of some threat or promise so that it was not voluntary. *Commonwealth* v. *Nott*, 135 Mass. 269, and cases cited. *Commonwealth* v. *Kennedy*, 135 Mass. 543. Even if it be assumed that the question " Don't you think you had better tell the truth ? " is in substance equivalent to saying in a direct form that " it is better to tell the truth," still the subsequent statement by the officer that he offered the prisoner " no hope or favor whatever " must be considered in connection with it. After a careful perusal of the whole evidence, we think that the presiding judge was warranted in coming to the conclusion that the confession was not procured by threat or promise, but was the free and voluntary act of the defendant.

2. The question whether tramps were in the habit of going into the barn was properly excluded, as also was the evidence as to the cost of the building. Under the circumstances of this case the presiding judge may well have thought that those matters were too remote to be of any practical use to the jury in deciding upon the guilt of the defendant or the credibility of the witness Smith, who was the owner of the building.

*Exceptions overruled.*