HOWARD WRIGHT *v.* STATE OF MARYLAND.
JAMES WATKINS *v.* SAME.

[Nos. 33, 32, October Term, 1939.]

*Decided November 29th, 1939.*

232

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*George B. Woelfel,* for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General,* and *Marvin I. Anderson, State's Attorney for Anne Arundel County,* with whom was *William C. Walsh, Attorney General,* on the brief, for the State.

DELAPLAINE, J., delivered the opinion of the Court.

The appellants were indicted separately, but were tried together, and were convicted and sentenced in the Circuit Court for Anne Arundel County for selling a lottery ticket and possessing lottery tickets in violation of statute. Code, art. 27, secs. 336, 342.

On February 10th, 1939, the liquor store of Howard Wright, appellant, in Annapolis, was searched by police officers for evidence of a lottery. The officers did not see any violation of law in the store; but, finding a locked box under the counter, they arrested Wright under a "warrant of investigation" and brought the box along to police headquarters. On searching the accused, Police Commissioner Thomas G. Basil found some money and two lottery slips used in the game of "numbers." The police commissioner also opened the box and found in it some slips and other articles. There was no evidence that Wright had made any resistance to search and seizure. Two warrants were subsequently issued, charging him with violating the statute.

On February 17th, James Watkins, appellant, an employee at the store, suspected of being the owner of contents of the box, was arrested under a "warrant of investigation." He was locked in a cell in the jail at 8 P. M., and his attorney was denied the privilege of see-

ing him or obtaining bail for him until the so called investigation was completed. About 4 P. M. on the following day, the prisoner was brought from his cell into the office to be grilled. At first he denied possession of any lottery slips, but later he made what the officers claimed to be a voluntary confession.

At the trial of the cases before the court without a jury, the attorney for the appellants objected to admission of the money and slips and the box and its contents into evidence on the theory that they were obtained by unlawful search. But the search of the liquor store was lawful, because the officers were authorized by the Alcoholic Beverage Act of 1933, and the consent of applicants for liquor licenses thereunder, "to inspect and search, without warrant, at all hours, any building and premises in which any alcoholic beverages are authorized to be manufactured or sold." Code (Supp. 1935), art. 2B, secs. 5, 34. Since the Alcoholic Beverages Act repealed all laws inconsistent with its provisions, it is impossible to invoke the Bouse Act of 1929 (Code [Supp. 1935], art. 35, sec. 4A) to suppress evidence obtained on licensed premises without a warrant. *Zukowski v. State*, 167 Md. 549, 175 A. 595. It is a general rule that whenever officers have authority to conduct a search, their search can extend to portable effects, such as the contents of baggage, box, or bundle. 56 *C. J.* 1200. In Alabama, where an accused was arrested without a warrant, and his suitcase was seized and found to contain whiskey, it was held that his rights under the constitutional provision against unlawful search and seizure had not been violated. *Jones v. State*, 19 Ala. App. 232, 96 So. 721. Likewise, in Maryland, where an officer noticed a package in a suspected man's overcoat and on demanding it found that it contained lottery tickets, our court decided that the arrest was lawful without a warrant, and that the tickets were admissible in evidence because they were considered voluntarily surrendered. *Blager v. State*, 162 Md. 664, 161 A. 1. This court has also held that, since a police officer may arrest an offender with-

out a warrant when a misdemeanor is committed in his presence or view, evidence obtained at the time of arrest, including lottery tickets found on the floor or in the pockets of a coat, was not obtained by unlawful search and seizure. *Silverstein v. State,* 176 Md. 533, 6 A. 2nd 465. In New York it has been held that a person unlawfully in custody, following arrest without a warrant, can lawfully be arrested under a valid warrant. *People v. Bradley,* 58 Misc. 507, 111 N. Y. Supp. 625; 6 *C. J. S., Arrest,* sec. 4. At the trial of the present cases, the court admitted the money and the slips and also the box and its contents; eight days later, before announcing the verdicts, the court excluded the box and its contents from the evidence.

But as there was no reversible error in the trial of Howard Wright, the judgment against him must be affirmed.

In the case of James Watkins, the court was asked to allow the accused to testify for the sole purpose of explaining the circumstances under which the confession was made. The court ruled that if he took the stand, even though for the sole purpose of explaining the manner in which the confession was obtained, he would nevertheless be subjected to cross-examination "as to any facts pertaining to the charge in the indictment that may be brought out by his counsel on direct examination." That ruling of the court was improper. Inasmuch as the admissibility of a confession is dependent upon its voluntary character, the question of whether or not it is voluntary must be decided in the first instance, when the offer to introduce the testimony is made. The sole question to be determined by the trial judge at that time is whether the confession is admissible because voluntary, or inadmissible because involuntary. 2 *Wharton's Evidence in Criminal Cases,* sec. 594; *Rasin v. State,* 153 Md. 431, 138 A. 338.

In describing the manner in which the confession was obtained, Watkins testified that Police Commissioner Basil told him that two other men accused of operating

the game had been released; and that if he would tell
the truth, he also would be released; but if he did not
tell the truth, he would get seven years in the Maryland
Penitentiary, where the cell and the whole treatment
would be worse than in jail, and where he would get
only bread and water for his meals. He also testified
that the police commissioner said to him: "If you don't
stop lying to me I am going to throw you back in the
cell and let you stay there until you rot." He declared
that the commissioner finally arose from his desk, went
over to the door and closed it, and then came back and
stood over him with his fist doubled up, and threatened:
"If you don't stop lying to me and tell the truth, I am
going to smack you in the mouth." He explained that,
as there were no others in the room except the police
officers, and he did not know what their powers were or
what they might do, he decided to say that he had sold
slips for a man whose name he did not know.

In some states the burden of proving that a confession
was not voluntarily made is placed upon the accused;
but in Maryland the burden of proof rests upon the
State to show affirmatively that a confession was freely
and voluntarily made, and was not obtained by any im-
proper inducements. *Nicholson v. State*, 38 Md. 140,
141; *Hammond v. State*, 174 Md. 347, 198 A. 704. In
this state a confession made by a prisoner after he had
been told it "would be better for him to tell the truth,
and have no more trouble about it" was held to be in-
admissible. *Biscoe v. State*, 67 Md. 6, 8 A. 571, 572. It
has also been held that a remark to an accused, while
in a nervous condition, that "it would possibly be to
his advantage to give the correct statement of the
affair" vitiated his confession, since the State had made
no effort to discharge the burden of proof. *Watts v.
State*, 99 Md. 30, 57 A. 542, 545. The fact that a confes-
sion is made by a prisoner while he is without counsel
does not of itself render it inadmissible. *McCleary v.
State*, 122 Md. 394, 89 A. 1100. But the circumstances
of the present case, including solitary confinement of the

accused for a period of twenty hours, with denial of counsel and bail, under the guise of an investigation, but for the obvious purpose of securing a confession, are indicative of coercion. The police commissioner admitted that he had warned the prisoner of the punishment for perjury, but contended that he did not make this threat until after the confession, when demanding names of accomplices. However, some of the other objections as to both promises and threats were not contradicted. It is evident that the burden of proof was not discharged by the State. The ruling of the trial court in admitting the confession was accordingly erroneous.

The practice in Annapolis of issuing "warrants of investigation," without requiring any disclosure of what is proposed to be investigated, has no sanction in law and no justification under our form of government. Long before the American Revolution, resolutions were adopted in the British House of Commons condemning the practice of issuing general warrants for the seizure of either persons or papers; and Lord Camden, in his celebrated opinion on the law of search, held: "There must be a full charge upon oath of a theft committed. The owner must swear that the goods are lodged in such a place." *Entick v. Carrington,* 19 Howell 1029.

Justice Bradley, in referring to Lord Camden's decision, declared in an opinion of the United States Supreme Court: "The law, as expounded by him, has been regarded as settled from that time to this, and his great judgment on that occasion is considered as one of the landmarks of English liberty. It was welcomed and applauded by the lovers of liberty in the colonies as well as in the mother country. * * * As every American statesman, during our revolutionary and formative period as a nation, was undoubtedly familiar with this monument of English freedom, and considered it as the true and ultimate expression of constitutional law, it may be confidently asserted that its propositions were in the minds of those who framed the Fourth Amendment to the Constitution and were considered as suf-

ficiently explanatory of what was meant by unreasonable searches and seizures." *Boyd v. United States,* 116 U. S. 616, 6 S. Ct. 524, 530, 29 L. Ed. 746.

Accordingly, when a party knows or suspects that a crime has been committed, and goes before a magistrate to apply for a warrant of arrest, he should state under oath the grounds of suspicion on which the application is grounded. The magistrate, before granting the warrant, should examine the applicant under oath regarding the alleged offense, and satisfy himself that there is such probable cause as would ordinarily induce an impartial man to suspect the guilt of the accused. One of the requisites of a valid warrant is that it shall designate specially the charge brought against the accused. 1 *Chitty on Criminal Law,* 21, 28; *Hochheimer's Criminal Law,* sec. 65. A Maryland statute also requires that every search warrant shall recite the grounds for the search. Acts of 1939, ch. 749.

On account of reversible error in the trial of James Watkins, the judgment against him must be reversed.

> *Judgment in No. 33, Wright v. State, affirmed, with costs.*
>
> *Judgment in No. 32, Watkins v. State, reversed, and new trial awarded.*