# WELDON JONES, JR., *v.* STATE OF MARYLAND

[No. 90, October Term, 1946.]

*Decided April 16, 1947.*

*W. A. C. Hughes, Jr.,* and *Charles H. Houston,* with whom was *Joseph C. Waddy* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General; J. Bernard Wells, State's Attorney of Baltimore City,* and *Anselm Sodaro, Assistant State's Attorney; Prentiss W.*

*Evans, State's Attorney for Somerset County,* and *Harry C. Dashiell, Special Assistant State's Attorney for Somerset County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Weldon Jones, Jr., appellant, aged 18, and his brother, Holbrook Jones, aged 14, Negroes, were indicted in Somerset County for the murder of I. Rayner Graham, a seafood packer. They were tried jointly in the Circuit Court for Wicomico County, and were found guilty of murder in the first degree. Weldon was sentenced to death, and Holbrook was sentenced to life imprisonment. The judgments of conviction were reversed by the Court of Appeals. *Jones v. State,* 185 Md. 481, 45 A. 2d 350. The cases were subsequently removed to the Criminal Court of Baltimore, where defendants were tried before three judges sitting as a jury. This time Holbrook was acquitted. Weldon was again convicted of murder in the first degree and sentenced to death, and he is now appealing from that judgment.

About 11 o'clock on the night of January 12, 1945, Graham's dead body was found on the ground in front of his packing house on Deal's Island. In one of his hands were the keys to the building. One of his pockets had been pulled out. His automobile lights were on and the motor was running. One door of the packing house had been forcibly opened. The office had been rifled. Sergeant J. R. Buckworth and Corporal T. A. Short, of the Maryland State Police, stationed at Salisbury, were immediately on the scene. Less than an hour before they had arrived in Chance, near the bridge to Deal's Island, after receiving a call to help search for two Negroes who had assaulted two white girls, Peggy Price and Ada White. The sheriff suspected Weldon and Holbrook Jones as the trouble makers, but he had not yet found them. The State police went to see the body of the murdered man, and shortly afterwards found two sets of footprints on the beach. They followed these tracks for about a mile until they turned from the beach into the woods in the

direction of the Jones home. About midnight, when the officers called at the home, the boys were upstairs. As soon as they came to the door they were arrested. The officers searched them, and took from appellant $105 in cash and 47 bullets. The officers then handcuffed them and put them in the police car. On the way to Salisbury a stop was made several miles north of Princess Anne, where Miss Price identified appellant as her assailant.

Arriving in Salisbury about 1:30 A. M., the police searched the boys more thoroughly. They found on appellant Graham's gasoline ration book, a number of gasoline ration coupons, and cigarettes. They kept the boys in the Salisbury station for about thirty minutes, and it was then decided to remove them to the police station at Benson, Harford County, about 100 miles away. They arrived there about 5 A. M., and the boys were then separately quizzed by Sergeant Paul J. Randall in the presence of two other police officers and a stenographer. Sergeant Randall said to appellant: "Your name has been mentioned in connection with the assault on two white women and the shooting of Mr. Rayner Graham." Appellant said he was willing to confess. The stenographer began taking down the questions and answers about 5:30 A. M. Making a complete confession, appellant said that, while he was feeling the effect of some drinks, he walked up behind Miss Price and grabbed her by the shoulder. Later he went to Graham's packing house to see if they were picking crabs. He gave the following story of the homicide: "I saw a white man come out of the crab house. I put the gun up to my shoulder and aimed at him and fired. I thought he was Gene Taylor. * * * We walked up to where the man was laying, and reached in his pocket and took all the money we could find." He said that he and his brother divided the money, and that he took $105. He further stated that he· threw his gun from the wharf into the water. He admitted that he had been well treated by the State Police. He stated that he made the confession freely and voluntarily. The questioning of the boys was com-

pleted about 6:45 A. M. After the statement had been typed, appellant read it and said he understood it. Sergeant Randall then asked him whether he wanted to make any changes, and he replied that he did not. The sergeant then asked him if he could write, and he said that he could. Appellant then signed the last page and initialed the three preceding pages. A confession was also signed by his brother.

Appellant contends that he did not make his confession freely and voluntarily. It is a settled rule that before a confession is admissible in evidence, it must be shown to have been freely and voluntarily made. It must not have been obtained by any threat or violence or by any promise of advantage. *Carey v. State,* 155 Md. 474, 142 A. 497. In this case the prisoner made his confession while in the custody of the police before he had an attorney. But the fact that a person makes a confession while in the custody of a police officer, or even while imprisoned under arrest, is not of itself sufficient to render it inadmissible, provided that it was not made as the result of any threat or inducement. *Toomer v. State,* 112 Md. 285, 76 A. 118; *People v. Fitzgerald,* 322 Ill. 54, 142 N. E. 542; *People v. Parsons,* 105 Mich. 177, 63 N. W. 69. And the fact that a prisoner makes a confession while he is without counsel does not of itself render it inadmissible. *McCleary v. State,* 122 Md. 394, 89 A. 1100; *Wright v. State,* 177 Md. 230, 235, 9 A. 2d 253.

In the case before us no corporal violence was inflicted upon the prisoner with the object of inducing him to make a confession. There were no "third-degree" or "sweat-box" methods. The officers, who were present when the confession was made, testified that appellant made the confession freely and voluntarily. According to the stenographic notes, Sergeant Randall explained to him: "It is my duty to inform you that you have a perfect right to answer all questions asked you, and you have a perfect right not to answer any and all questions asked you." The testimony of all the officers was clear that there were no threats or promises. On the

other hand, the testimony of appellant was conflicting and unconvincing. He admitted that he swore falsely at the first trial in Salisbury when he denied that he had signed the confession.

Appellant now contends that he was induced to confess by fear of mob violence. He stresses that, after he was taken from his home at midnight, he was put in the automobile with the father of a girl he was suspected of having assaulted, and that he knew that mobs had lynched Negroes in the past when accused of having assaulted white women. He contends that the circumstances at the time he signed the confession, climaxing the events of the night, were sufficient to frighten a country boy, who had gone only as far as the sixth grade in school, and make him believe that it would be best for him to make a confession. He says that, if the police feared mob violence, as shown by the fact that they took him more than 40 miles away to Salisbury, the seat of Wicomico County, and then about 100 miles further to Harford County, certainly he had sufficient reason to be afraid. Sergeant Randall admitted that the two suspects had been taken away from Princess Anne in order to prevent any possibility of disorder.

It is well established that a confession by an accused induced by fear of mob violence is involuntary and inadmissible in evidence. In this case neither appellant nor his 14-year-old brother made any suggestion at the first trial in Salisbury that there had been any threat or coercion. The Court of Appeals accordingly found that the confessions were properly admitted in evidence. *Jones v. State*, 185 Md. 481, 45 A. 2d 350, 354. Even at the trial now complained of, there was no evidence of mob violence or indeed of any mob. Sergeant Buckworth, when questioned as to whether the sheriff had said anything about excitement in the neighborhood, replied: "He did not. There was no state of excitement in the community." Even though appellant may have considered the possibility of being lynched, he was given the best possible police protection by being taken immediately to

Harford County on the Western Shore of the Chesapeake Bay. Appellant claimed that, when his typed confession was read to him, Sergeant Randall said: "If you don't sign it, I am going to take you back to the Eastern Shore to turn you loose." Appellant's statement does not deserve any credence. Not only did Sergeant Randall positively deny it, but the careful way in which the prisoners were questioned, as evidence by the stenographic report, shows plainly that the confessions were voluntary.

In Maryland the burden of proof is on the State to show affirmatively that a confession was freely and voluntarily made, and was not obtained by any improper inducements. *Hammond v. State,* 174 Md. 347, 198 A. 704; *Wright v. State,* 177 Md. 230, 9 A. 2d 253; *Taylor v. State,* 187 Md. 306, 49 A. 2d 787. In most States the question whether a confession was voluntarily made is primarily for the trial judge, but where the testimony is conflicting, the judge may admit the confession and instruct the jury that they must find it to be voluntary, before considering it as evidence. *Commonwealth v. Hudson,* 185 Mass. 402, 70 N. E. 436; *People v. Doran,* 246 N. Y. 409, 159 N. E. 379; *People v. Baker,* 251 Mich. 322, 232 N. W. 381. But in Maryland the preliminary question whether a confession is admissible must be decided by the judge in every case before it is permitted to go to the jury. *McCleary v. State,* 122 Md. 394, 89 A. 1100. We recognize that, where an alleged confession is offered, and there is contradiction as to the circumstances under which it was made, it then becomes necessary for the trial judge to weigh the evidence, and decline to admit the confession unless he finds that the State has met the burden of establishing the voluntary character of the confession. *Lubinski v. State,* 180 Md. 1, 22 A. 2d 455. After a confession is admitted in evidence, the jury should consider it in the light of all the surrounding circumstances and in connection with all the other evidence. *Thomas v. State,* 186 Md. 446, 47 A. 2d 43. As there is no precise formula by which to determine whether a confession is voluntary, the determination of

the question lies within the sound discretion of the trial judge. The determination of the question by the trial judge will not be disturbed by the Court of Appeals, unless the discretion has been clearly abused. The circumstances that constitute such improper influences as to make a confession inadmissible are reviewable, but the credibility of conflicting evidence concerning the circumstances is a matter for the trial judge, and is not reviewable unless there is a manifest abuse of discretion. *Demby v. State,* 187 Md. 7, 48 A. 2d 586, 589; *People v. Bartz,* 342 Ill. 56, 173 N. E. 779; *People v. Perry,* 195 Cal. 623, 234 P. 890. In the instant case we find no abuse of discretion by the judges in the Criminal Court in determining that the confession was freely and voluntarily made.

Appellant also contends that the State did not prove the *corpus delicti.* It is an accepted rule that an extrajudicial confession of an accused does not warrant a conviction, unless there is also independent evidence to establish the *corpus delicti. Weller v. State,* 150 Md. 278, 132 A. 624; *Markley v. State,* 173 Md. 309, 317, 196 A. 95. Judge Learned Hand, while conceding that there is a very general concurrence of judicial opinion in the United States that some corroboration of a confession is necessary for conviction, made the following comment on the subject: "That the rule has in fact any substantial necessity in justice, we are much disposed to doubt, and indeed it seems never to have become rooted in England. * * * But we should not feel at liberty to disregard a principle so commonly accepted, merely because it seems to us that such evils as it corrects could be much more flexibly treated by the judge at trial, and even though we should have the support of the Supreme Court of Massachusetts in an opposite opinion." *Daeche v. United States,* 2 Cir., 250 F. 566, 571. We follow the general rule that the independent evidence necessary to establish the *corpus delicti* need not establish the fact beyond a reasonable doubt. It is sufficient if, when considered in connection with the confession, it satisfies the jury beyond

a reasonable doubt that the offense was committed and that the defendant committed it. 7 *Wigmore on Evidence,* 3d Ed., sec. 2073. The evidence of the *corpus delicti* may be either direct or circumstantial. *State v. Mowry,* 21 R. I. 376, 43 A. 871; *Commonwealth v. Johnson,* 162 Pa. 63, 29 A. 280; *State v. Coats,* 174 Mo. 396, 74 S. W. 864; *State v. Bestolas,* 155 Wash. 212, 283 P. 687. In a homicide case the proof of the *corpus delicti* is sufficient if it establishes the fact that the person for whose death the prosecution was instituted is dead, and that the death occurred under circumstances which indicate that it was caused criminally by someone. *Commonwealth v. Coontz,* 288 Pa. 74, 135 A. 538. In this case we consider whether the *corpus delicti* has been established only in connection with the admissibility of a confession. Otherwise, it is a matter for the jury, not reviewable here. *Delcher v. State,* 161 Md. 475, 486, 158 A. 37.

It is earnestly contended that, while it is true that Graham was killed by a bullet, the gun from which the bullet was fired has not been found, and there is nothing except the confession to prove that the crime of murder was committed. There is no merit in that contention. All of the circumstances surrounding Graham's death point unerringly to murder, rather than accident or suicide. When it was shown that some of Graham's belongings were found in the pockets of the accused boys, the *corpus delicti* was abundantly proved. In addition, three policemen found a wallet containing some of Graham's papers and matches, and a registration card issued for his Packard sedan, buried in the sand near the base of the lighthouse at Chance. This was on or near the route from the packing house to appellant's home. These articles were admissible, not only as evidence that the crime had been committed, but also as a link in the chain connecting appellant with the crime.

Finally, we reject appellant's contention that the verdict of murder in the first degree was unwarranted because the State did not prove premeditation. He argues that, even though his confession is admissible, he

said in that confession that he thought he was shooting Gene Taylor, and as he had no reason to kill Graham, he had insufficient time for deliberation. The Constitution of Maryland, art. 15, sec. 5, provides that in the trial of every criminal case the jury shall be the judges of law as well as of fact. The Court of Appeals has always refused to pass upon the sufficiency of evidence to establish the commission of a crime with which a defendant has been charged. Where there is no reversible error in the rulings of the trial court, the verdict and judgment must stand. *Wilson v. State,* 181 Md. 1, 26 A. 2d 770; *Demby v. State,* 187 Md. 7, 48 A. 2d 586.

*Judgment affirmed.*