## DAVIS *v.* STATE

[No. 110, October Term, 1952.]

464

*Decided June 11, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William H. McCullough,* with whom were *Robert W. McCullough* and *William T. Pace,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Carlyle J. Lancaster,* State's Attorney for Prince George's County and *Wilmert D. Pyles,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

The appellant, Maurice Davis, Jr., was indicted for assault with intent to kill, assault and battery, and carrying a concealed weapon. He was tried by the trial judge, without a jury, and convicted and sentenced for assault and battery and carrying a concealed weapon. The single question on appeal is whether there was sufficient evidence to convict the appellant of either of those two charges.

At the trial Edward Washington, the person who was assaulted, was called as a witness by the State. He testified that on May 17, 1952, he was involved in an argument with the appellant, Maurice Davis, Jr., in Pat's Restaurant at Fairmount Heights, Maryland. They were seated at a table when the argument started. Washington said he went outside and got in a car. Davis came to the car and told him to get out of it. When he did not move, Davis grabbed him and told him to stand up and talk. When he got up they started to fight. It was raining and both were on the ground. At that point he heard somebody say: "It was a gun fell out of the car and shot you." He was told it fell out of a yellow Mercury car. He did not know who owned the car. He testified that somebody said as he got off the ground: "Yes, that old Maurice Davis took and shot you." "So I said, 'I couldn't say nothing.' I did not know Maurice

Davis, I did not know I had been shot. Then about a second later I saw blood gush on the windshield of the car; the next thing I know, I heard the siren." He was shot in the head. He stayed in the hospital for thirteen days. He said he did not see the man who shot him and did not feel the shot and, although they said he was shot twice, they took only one bullet out of his head, back of the ear. At that point in his testimony the assistant state's attorney requested the court to allow him to cross-examine Washington as a hostile witness. The defense offered no objection to this. Washington then testified on cross-examination by the State that the argument started between 11:30 P.M. and 12 o'clock. He did not see Davis and did not know Davis at the time. He was fighting with Davis and got in an argument with him. He heard people say that the gun fell out of a yellow Mercury car which was near him. He did not see the gun at all. He said he told the officers that he was shot twice because the doctor told him that. He said he did not see whether he was shot once or twice because he did not feel the shot. There were two or three hundred people around at the time.

Officer Free, of the Prince George's Police Department, testified that he assisted Sergeant Pearson in investigating the alleged shooting; that he first saw Maurice Davis, the appellant, at the Detective Bureau; that no threats or promises were made. A free and voluntary statement was made by the appellant in the presence of Detective Pearson. The statement made by the appellant, which his counsel here admits was voluntarily made, was as follows: "At about three A.M. May 17, 1952, I was working in my place, Pat's Restaurant, 1113-64th Avenue, Fairmount Heights, Maryland, when I noticed that the Bear Machine was off. I went over and inspected the wire and I discovered it was cut. I walked around a few minutes looking. Then I saw a man with a cord in his hand put something in his pocket. Immediately after I saw that, this man dropped the cord. Then I went over to inspect this cord, and'

some fellow came over to me and said that the man who had cut it just went out the door. The man he showed me was the same man that I had seen holding the cord. I went out, and the man was sitting in the right front seat of a car, and the car was backing out. Then I opened the right front door, grabbed him and pulled him and he came out of the car. I may have said a bad name to him. He had a whiskey bottle in his hand when he came out of the car, and he motioned the whiskey bottle by drawing it back. When he done that, I reached in my right pants pocket and pulled out my gun. I struck him side of the head. Then the gun went off and he fell to the ground. I stopped. I stooped down and lifted his head and let it go, and he slumped over like he was dead. I walked away, throwed the pistol in the woods in back of the place. I then got in my car, drove to my sister's at 1654 Gale Street Northeast, Washington, D. C., where I was picked up later by the police. Question: Which pocket did you have the pistol in? Answer: Right side pants pocket. Question: At the time the shot was fired did you have hold of that gun? Yes, I had hold— Q. (By Mr. Pyles) That was the statement—A. With my left hand. Q. Did you have the gun cocked at the time you hit the man with it? A. No, I did not. Q. That was the statement given by Maurice Davis? A. That is right." The officer then identified Maurice Davis. At that point the State closed its case.

The appellant, in his own defense, testified that he discovered that the wire to the "Bear Machine" in the restaurant was cut and someone told him that the man who had done it was outside. He walked outside and had an argument with the man. They started to tussle. "Somebody said: 'Davis, you shot him.' I said: 'I didn't have no gun.'" He was afraid so he jumped in his car and went to his sister's house. The officers picked him up there the next morning. He reiterated that he did not have a gun and did not shoot Washington. When arrested he asked the officers if he could get in touch with his family. They replied that he could do

this after they questioned him. He was asked whether he was not the boy who had some trouble with the Chief of Police. He said, " 'Yes sir.' He said, 'How much time did you do for that?' I said, 'Six months.' He said, 'Yes, you are the one, I want to get something on you, every cop in the police, in the police force, want to get something on you,' just like that. I just got scared, and he said, 'Did you have a gun?' I said, 'No, sir.' He said, 'You are telling a lie,' just like that. I said, 'That is all right,' I just told them, yes, just to get away from them, that is all." He denied that he ever told the officers that he shot Washington. On cross-examination he admitted that he told the officers that he threw the pistol in the bushes. He said the only reason he told them that was because he "was scared". He went with the officers to look for the pistol the next day. It was not found. He further said his mother owned the restaurant and he helped to run it. He said he heard the gun when it went off and at that time he was tussling with Washington. When the gun went off he thought Washington was shot because he fell down. He did not know where the shots came from. He further said Washington grabbed his clothes and he grabbed Washington's clothes. He further admitted that he had been previously convicted of carrying a concealed weapon.

Edward Washington, when called as a witness by the defense, reiterated that Davis told him to get out of the car and when he got out he grabbed Davis and they started tussling on the ground. It was then he heard somebody say that the gun dropped out of the yellow Mercury car. He said Davis could not have had a gun in his hand because he had both hands in his, Washington's, chest. Washington said he was intoxicated at the time.

Officer Richard A. Pearson testified in rebuttal for the State that he was at the Hyattsville Police Station when Maurice Davis gave the hereinbefore quoted statement to the police. He said no threats were made against

him and no inducements offered to him and the statement read by Mr. Free was correct.

The appellant specifically contends there was no evidence to corroborate appellant's confession and the confession, thereby being uncorroborated and inadmissible, was not sufficient to sustain the conviction. In this Court, counsel for appellant admitted that the confession was voluntarily made.

The case of *Wood v. State,* 192 Md. 643, 649, 65 A. 2d 316, 319, is so pertinent on the question here presented that we quote at length from Judge Delaplaine's opinion therein: "The principal reason advanced by appellant against the admission of his confession was that the testimony of Parker and Dorothy Thomas, the only eyewitnesses of the fight who testified at the trial, to the effect that a revolver was shot by somebody in the automobile was insufficient to prove the *corpus delicti.* He argued that the eyewitnesses did not testify positively that he carried a concealed weapon. He urged that, even if he had fired the shot, the revolver might have been lying unconcealed on the seat or floor of the automobile. There is no question that an extra judicial confession of guilt by a person accused of crime, uncorroborated by any other evidence, is not sufficient to warrant a conviction. *Weller v. State,* 150 Md. 278, 132 A. 624; *Markley v. State,* 173 Md. 309, 196 A. 95; *Jones v. State,* 188 Md. 263, 52 A. 2d 484. The law requires that a jury be convinced beyond a reasonable doubt of the defendant's guilt, and generally an uncorroborated confession does not as matter of law establish the commission of crime beyond a reasonable doubt. The purpose of the rule requiring corroboration of confessions is to protect the administration of the criminal laws against errors of convictions based upon untrue confessions alone. *Warszower v. United States,* 312 U. S. 342, 61 S. Ct. 603, 85 L. Ed. 876. The courts, in recalling cases in which false confessions have been made through duress or psychopathic aberration, have considered the danger of accepting a confession of an accused person

without any evidence other than the confession that the crime in question has been committed. The character of the evidence to prove the *corpus delicti,* and its sufficiency for that purpose, depend largely upon the circumstances of each particular case. It may be stated as a general proposition that it is essential in all criminal prosecutions to prove the element that constitutes the crime. Thus, in prosecutions for carrying a concealed weapon, it is essential to prove that someone carried a dangerous or deadly weapon 'concealed upon or about his person'. Code 1939, art. 27, sec. 40; *State v. Hale,* 70 Mo. App. 143.

"However, the *corpus delicti* may be proved by circumstantial evidence when direct evidence is not available. *Jones v. State,* 188 Md. 263, 52 A. 2d 484. It is also not necessary that the evidence independent of the confession must be full and positive. *Forte v. United States,* 68 App. D. C. 111, 94 F. 2d 236, 127 A. L. R. 1120. In addition, the evidence necessary to corroborate a confession need not establish the *corpus delicti* beyond a reasonable doubt. It is sufficient if, when considered in connection with the confession, it satisfies the jury beyond a reasonable doubt that the crime was committed and that the defendant committed it. As Judge Learned Hand said in *Daeche v. United States,* 2 Cir., 250 F. 566, 571, circumstances corroborating a confession need not independently establish the truth of the *corpus delicti* at all, either beyond a reasonable doubt or by a preponderance of proof, but any such circumstances will serve which in the judge's opinion go to fortify the truth of the confession. *United States v. Kertess,* 2 Cir., 139 F. 2d 923, 929.

"In the case at bar it is uncontradicted that a shot was fired from the automobile, and that appellant was in the automobile when the shot was fired. While his companion swore that she did not know who fired the shot, Parker testified that it seemed to him that the shot was fired by someone on the back seat, and later testified positively that it was fired from the back seat. The only persons

on the back seat were appellant and his companion, and the latter swore that she had no weapon of any kind that night. We are not impressed by appellant's suggestion that, even if he had fired the shot, the revolver could have been lying on the seat or floor of the automobile and hence was not a 'concealed weapon'. Even if the revolver was unconcealed at the time of the fight, his companion testified that he had no weapon in his hands when he entered the automobile. For these reasons we hold that the testimony of the eyewitnesses was sufficient corroboration to warrant the judge in admitting the confession." *United States v. Washington,* (D. C., Md.), 69 Fed. Supp. 143, 146, also gives a dissertation on the reason why the *corpus delicti* must be established independently of the judicial confession. See also *Bell v. United States,* (4th Circ.), 185 Fed. 2d 302, 309.

Washington definitely testified to the assault and battery upon him by the appellant. Washington having been shot, as in the case of *Wood v. State, supra,* it is established that a gun was fired. Although there was testimony that such a weapon fell out of a yellow Mercury car, no one having previously seen it, it must have been concealed, if it was the weapon from which the shots were fired. As in *Wood v. State, supra,* the possibility that the gun was unconcealed on the seat or floor of the car is not impressive. No one having seen any other weapon, if the shots came from another weapon, it also must have been concealed. Under the authorities herein referred to, it is not necessary that the evidence, aside from the confession, definitely established that the accused was the person who carried the concealed weapon. We are therefore of the opinion that the evidence, independent of the confession, was sufficient to establish the *corpus delicti* and the confession was therefore admissible.

As to appellant's contention that the evidence was not sufficient to sustain the conviction, under Rule 7(c) of the Criminal Rules of Practice and Procedure of this Court, the verdict of the trial court shall not be set

aside on the evidence unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. *Lambert v. State,* 196 Md. 57, 67-68, 75 A. 2d 327, 332; *Edwards v. State,* 198 Md. 132, 151, 83 A. 2d 578, 581; *Auchincloss v. State,* 200 Md. 310, 316, 89 A. 2d 605, 607. There was definite evidence, if believed by the trial judge, that the appellant committed the assault and battery and carried a concealed weapon. The trial judge and not this Court must decide what testimony is to be believed. *Berry v. State,* 202 Md. 62, 95 A. 2d 319, 321; *Stokes v. State,* 202 Md. 166, 95 A. 2d 871, 874. The judgment will be affirmed.

*Judgment affirmed, with costs.*