ZERWITZ *v.* STATE

[No. 2, October Term, 1954.]

*Decided November 11, 1954.*

358

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Herbert Myerberg,* with whom were *Joseph Leiter* and *Bernard F. Goldberg,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, and *Daniel M. Murray, Jr.,* State's Attorney for Howard County, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The only question presented in this appeal is whether the verdict of the court, sitting without a jury, in a case charging the acceptance of bets on horse races, was clearly erroneous.

For several years prior to the offense charged, the accused had been the proprietor of a pool room in Ellicott City. He usually did not arrive at his place of business until around 1 P. M., commuting from his home in Baltimore City by streetcar. On December 7, 1953, Chief Moxley and Sergeant Harrison of the Howard County police, began to investigate his activities. Over a period of two weeks, they observed him periodically visiting a cab stand, a grocery store and a restaurant in the neighborhood, talking to various men. On several occasions they observed him seated at a table with a scratch sheet before him, taking money from other men. After receiving the money, Zerwitz would go to a telephone and make calls. Finally, on December 17, 1953, after the officers had seen him in consultation with these

men, the officers arrested him and took him to the station house. Chief Moxley testified that three race tracks were in operation on that date. A search of the appellant disclosed he had on him $582.27 in currency, in different pockets, an Armstrong Scratch Sheet and a Daily News. No bet slips or similar memoranda were found on Zerwitz, nor did a search of his pool room disclose anything of an incriminating nature.

Chief Moxley testified that while at the police station "We talked to him about his actions down on the street, what he was doing." Mr. Murray, the State's Attorney, talked to him and then left Zerwitz and Moxley together. "Zerwitz * * * said, 'I wasn't going to tell Mr. Murray a damn thing. * * * Chief, you're a hell of a good fellow, and I was going to get you a nice Christmas present. All you had to do was come down and tell me to cut it out, and I'd cut it out.' I asked him why he was doing it. He knew—" At this point the court asked the witness, "Doing what?" The witness answered, "Bookmaking. * * * He said if I'd just come down and told him to cut it out, he would have cut it out." The accused took the stand and denied making this statement. He testified that the officers questioned him about bookmaking when they arrested him, but he told them he had never made book in his life.

This is virtually all the evidence against the defendant, but we think it is sufficient to support the verdict. His actions in taking sums of money from various men at times and on days when races were being run, his possession of scratch sheets and racing publications and a large sum of money distributed in different pockets, support an inference that he was taking bets on races. The trial court was not obliged to believe his story that he had loaned money to these men, or that the distribution of the money was from fear of robbery. Cf. *Berry v. State*, 202 Md. 62, 67. While it is an unusual feature of the case that no notations were found in the handwriting of the accused, it is not incredible that he carried

the transactions largely in his head, aided, no doubt, by the distribution of the money in different pockets, and the fact that telephone calls were currently made that would enable the party called to make a written record of the transactions.

But if we assume that Zerwitz's actions, in themselves, might not establish guilt, the testimony of his statement to Chief Moxley would seem to clinch the matter. Zerwitz knew that he was accused of bookmaking, and the statement that he would have "cut it out", if he had been asked, is an implied admission that he·was doing what he was accused of. No question is raised as to the admissibility of Moxley's testimony, to which there was no objection.

The appellant relies strongly upon *Sugarman v. State,* 173 Md. 52. In that case there was testimony that Sugarman, after his arrest, said: "Let me go, officer. * * * I'll make it all right with you. I'll give you my automobile or anything. You know what I am doing. You know what Judge O'Dunne will do to me." A majority of the court held that this statement was insufficient to justify its interpretation as an admission that he was engaged in some violation of law. We think the case is distinguishable. There the officer testified that he had not seen Sugarman doing anything "wrong" at the time of his arrest, but intended to take him to the police station on a general charge of investigation, because appellant's explanation of his business did not look reasonable to the officer. It was not until after the defendant had escaped from the officer and had been rearrested, and after a search of the defendant's automobile and the cell in which he had been placed disclosed the presence of lottery slips, that he was accused of illegal possession of lottery slips. The exact ruling of the court was that the statement should not have been admitted, over objection, because it was not definite enough to be characterized as an admission by Sugarman that he was engaged upon some scheme of law violation. In the

instant case the statement came in without objection, and in the context and under the circumstances, we think it can fairly be characterized as an implied admission of the particular crime with which he was charged.

For the purposes of this case we have treated the statement attributed to the accused as an admission, rather than a confession. The distinction was pointed out in *Ford v. State,* 181 Md. 303, 307, and *Delnegro v. State,* 198 Md. 80, 87. Here, the statement went beyond a mere admission of collateral facts that, standing alone, would not establish the commission of the crime charged, as in the cases cited. On the other hand, it fell short of a direct admission of guilt, for guilt could only be inferred from the statement that he "would have cut it out" on request. As we have stated, this inference, together with other testimony as to the incriminatory actions of the accused at the times and places stated, justify the verdict. There was no objection to the testimony or motion to strike it out. Cf. *Curreri v. State,* 199 Md. 54, 57. See also *Heyward v. State,* 161 Md. 685 and *Blager v. State,* 162 Md. 664, where admissions of violation of the gambling laws were held to be sufficient, under the circumstances, to justify an arrest. Even if the arrest were illegal, this fact would not render the statement inadmissible. *Frank v. State,* 189 Md. 591, 595; *Courtney v. State,* 187 Md. 1, 6; Code (1951), Art. 35, Section 5, as amended by Chapter 419, Acts of 1953. The other testimony in the case sufficiently established the *corpus delicti* and corroborated the statement. Cf. *Davis v. State,* 202 Md. 463, 469.

*Judgment affirmed, with costs.*