Syllabus.

ISAAC HUGGINS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield November 1, 1890.*

1.  CRIMINAL LAW—*buying stolen property for gain—elements of the offense.* By the Criminal Code (secs. 239 and 241) the receiving or buying of stolen property, or aiding in concealing the same, for gain, or to prevent the owner from repossessing himself thereof, with knowledge that the property had been stolen, is made a substantive crime, subject to punishment, without reference to the trial or conviction of the person committing the larceny.

2.  SAME—*of the indictment—and proof thereunder—for buying stolen property.* On indictment for buying stolen property for gain, the name of the thief, or of the person from whom the defendant received or bought the property, not being matter necessary to the identification of the offense, need not be alleged or proved.

3.  But when the pleader, although unnecessarily, alleges the commission of the larceny or burglary or robbery by a particular person, or that the property was bought or received of a particular person, the allegation becomes matter of description, and must be proved as laid.

4.  SAME—*buying stolen property—guilty knowledge on the part of the buyer.* To convict a party for buying stolen property for his own gain, knowing the same to have been stolen, there being no count for concealing or aiding in concealing the property, it is necessary for the People to prove a guilty knowledge of the defendant, at the time of his purchase, that it was stolen.

5.  Knowledge that property has been stolen may be shown by proof of attending facts and circumstances from which that inference arises. It may be shown by proof that the purchase was for much less than the real value of the property, that the party denied that the property was in his possession, or that he concealed it.   So it may be shown by his failure to make reasonable explanation, the evil reputation of the person from whom purchased or received, and the like.

6.  The knowledge of the theft need not be that actual or positive knowledge which one acquires from personal observation of the fact. It is sufficient if the circumstances be such accompanying the transaction as to make the accused *believe* the goods had been stolen.

7.  The knowledge of the accused, in this sense, is the gist of the offense, and must be found by the jury as a fact.   In determining whether the fact existed, the jury will be justified in presuming that

244 HUGGINS v. THE PEOPLE.

Brief for the Plaintiff in Error. Opinion of the Court.

the accused acted rationally, and that whatever would convey knowledge or induce belief in the mind of a reasonable person, would, in the absence of countervailing evidence, be sufficient to apprise him of the like fact, or induce in his mind the like impressions and belief.

8. SAME—*possession of stolen property—as evidence of guilt.* Where a person almost immediately after a burglary and larceny was found in the possession of the stolen property, the presumption of fact arising from such possession, unexplained, would warrant his conviction of the burglary and larceny.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. ALFRED SAMPLE, Judge, presiding.

Mr. THOMAS F. TIPTON, and Mr. CHARLES M. PIERCE, for the plaintiff in error:

We do not care to discuss the facts as developed by the evidence, as it seems so clear that the evidence is wholly insufficient to warrant a conviction. Then the subsequent fact that Watson was acquitted on an indictment charging him with the larceny of the ring, and there being no evidence whatever that Huggins knew that the ring was a stolen ring. We cite *Aldrich* v. *People*, 101 Ill. 16.

There being no evidence of the larceny of the ring, there could be no conviction. *Andrews* v. *People*, 117 Ill. 195.

The court erred in its instructions for the People on the question of reasonable doubt. *Dunn* v. *People*, 109 Ill. 635.

That the proof was wholly insufficient, we cite *Hodge* v. *People*, 117 Ill. 35.

Mr. GEORGE HUNT, Attorney General, Mr. E. H. MINER, State's Attorney, and Mr. E. McCONNELL, Assistant State's Attorney, for the People.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Plaintiff in error was indicted, in the McLean circuit court, for feloniously buying, for his own gain, of one William Watson, a diamond ring of the value of $60, the goods and chattels of Josephine John, knowing that the same had been feloniously

and burglariously stolen by the said William Watson. Upon the trial, the jury rendered a verdict of guilty, finding the value of the property to be $35, and fixing his punishment at confinement for one year in the penitentiary. Motion for new trial was overruled, and the defendant sentenced on the verdict.

The evidence shows that on Sunday night, "just before Thanksgiving" day, A. D. 1888, while the family were at church, the house of Thomas John, in said county, was burglariously entered, and a solitaire diamond ring, the property of Josephine John, was stolen. The value of the ring is shown to be between $35 and $60. The *corpus delicti*, the larceny, is clearly established, and also that the larceny was committed at the time of the burglary.

By the statute, (Crim. Code, secs. 239, 241,) the offense of receiving or buying stolen property, or aiding in concealing the same, for gain, or to prevent the owner from repossessing himself thereof, with knowledge that it has been stolen, is made a substantive crime, subject to punishment, without reference to the trial or conviction of the person committing the larceny; and the name of the thief, or of the person from whom the defendant received or bought the stolen property, not being matter necessary to the identification of the offense, need not be alleged or proved. But where the pleader, although unnecessarily, alleges the commission of the larceny, or burglary or robbery, by a particular person, or that the property was bought or received of a particular person, the allegation becomes matter of description, and must be proved as laid. Bishop on Crim. Proc. 982; 3 Chitty's Crim. Law, 991, and authorities cited.

The date of the larceny is fixed as on Sunday night, "just before Thanksgiving day," in November, 1888, no witness seeming able to give the precise day. It is shown by the testimony of two witnesses, that in November, 1888, William Watson, the person charged with the larceny, had the stolen ring, which the witnesses identify, in his possession, and sold it to plain-

tiff in error.   The defendant below, Huggins, testified that he
bought the ring of said Watson for $10, "about a week before
Thanksgiving," in 1888; that Watson was then wearing the
ring and claiming it as his own.   It is clear, therefore, that
Watson, almost immediately after the larceny, was in the pos-
session of the stolen property, and the presumption of fact
arising from such possession, unexplained, would have war-
ranted his conviction of the burglary and larceny.   No explan-
atory proof occurs in this record, and we think the jury were
justified in finding the allegations of the indictment, in this
respect, sustained by the evidence.

The buying of the stolen property is admitted, but it was
necessary in this case, there being no count for concealing or
aiding in the concealment of the property, for the People to
prove the guilty knowledge of the defendant at the time of the
purchase,—that is, that he then had knowledge that the prop-
erty was stolen property.   It rarely happens that direct and
positive proof of the guilty knowledge is attainable, unless the
thief be produced for that purpose.   It is therefore, ordinarily,
to be shown by proof of attending facts and circumstances,
from which, by the common understanding and experience of
men, the inference of the fact arises.   Thus, numerous cir-
cumstances may be shown, as, that the purchase was for much
less than the real value; that the defendant denied that the
property was in his possession, or concealed it; his failure to
make reasonable explanation; the evil reputation of the person
from whom purchased or received, and the like.   (Bishop on
Crim. Proc. 991; Wharton on Crim. Law, 983, and cases cited.)
The knowledge of the theft need not be that actual or positive
knowledge which one acquires by personal observation of the
fact.   "It is sufficient if the circumstances were such, accom-
panying the transaction, as to make the prisoner believe the
goods had been stolen."   (Bishop on Crim. Law, 1138; Whar-
ton on Crim. Law, 984.)   If he purchase or receive the goods

with a belief that they are stolen, he will be held to have had that knowledge required by the statute.

The knowledge of the prisoner, in this sense, is the gist of the offense, and must be found by the jury as a fact. In determining whether the fact existed, the jury will be justified in presuming that the prisoner acted rationally, and that whatever would convey knowledge or induce belief in the mind of a reasonable person, would, in the absence of countervailing evidence, be sufficient to apprise the prisoner of the like fact, or induce in his mind the like impression and belief.

An examination of the evidence in this record will carry conviction, it seems to us, to any unbiased mind, of the guilt of this defendant. He knew the negro man Watson had been in the penitentiary. He was himself without means or business, and, meeting Watson, saw the ring in his possession, and upon Watson's offer to sell, bought it at one-fourth or one-fifth of its value. No questions were asked or inquiries made as to where or how Watson procured it, or as to its value. Nor does it appear that any price other than that paid was asked, or that its value was talked of between the purchaser and seller. The ring was purchased for $10 by defendant, $7 of which was paid on the night of the purchase, by Mary Stoner, and the rest was to be paid when the defendant got it. A few days afterward the $3 was paid by the defendant, and the witness Stevens testifies it was for the balance on a diamond ring sold by Watson to the defendant. The defendant then, as he says, gave the ring to Mary Stoner, and that subsequently he took it and pawned it to Em Smith for $1.75, and testifies that he never saw it afterwards. However, about the 1st day of January, 1890, a warrant was issued for the arrest of the defendant and his mother, and to prevent the mother's arrest, who, the defendant said, knew nothing about the ring, he produced the ring and surrendered it to the officers. It is true he testifies that he got it of Mary Stoner; but if that was so, the fact remains that he knew where it was, and produced

it.    Mary Stoner was upon the witness stand, but was not asked to corroborate his statement.

About the 1st of December, 1889, suspicion having attached to the defendant, Joseph W. Franks went to him, and told the defendant he understood he had some rings.    The defendant thereupon showed some rings, but not the one in question. This witness testifies : "Then I explained to him what kind of a ring I wanted.    It was a diamond ring with one set,— solid gold ring, and run down square on the bottom.    I explained to him what kind of a ring it was," and that it was stolen from Mr. John.    The witness then testifies : "We talked, and he said he didn't know anything about such a ring."    The officer then asked him to see if he could find out about it, and he promised to do so.    On the next evening he met Franks, and told him he had not had time to see any one he wanted to see.    Franks told him to see his parties, and they met again on the following evening.    He then said he had tried, but couldn't hear anything about such a ring.    A few days afterwards Franks told the defendant that he (Franks) knew he had the ring,—he had so understood, and was sure of it.    Defendant then again asked for a description of the ring, and upon its being again given he said he did have it,—that he bought it of Watson.    Upon being asked where the ring was, he said he had sold or pawned it to a girl by the name of Smith, for $1.75, who, he said, was in Springfield.    Upon being asked if he thought she had it yet, he said she promised to keep it for him until he redeemed it.    He promised to go to Springfield about Christmas, but reported afterwards to the officer that Smith had gone from Springfield, and he could not get it.    Later on, the officer becoming satisfied, as he says, that the Smith girl did not have the ring, told the defendant so, and charged him with having it, or at least that he knew where it was, and could get it.    The defendant then told the officer he could get the ring if he would pay $20.    The officer declined to give him that sum, but offered to give him

all that was offered by the owner; but after several interviews he said he would not get it unless promised that much money. As already seen, upon the arrest of his mother he produced the ring. In these statements Franks is corroborated in many particulars by James Stone, who was then chief of police of the city of Bloomington.

In addition to the foregoing, it should be said, that about the time and just before the arrest on the warrant before mentioned, the defendant was asked if his mother did not buy the ring back of Em Smith, and he replied that "she furnished the money to buy it back." When, is not shown; but it must be apparent that while he was misleading the officers in the attempt to find the girl Smith in Springfield, Decatur and elsewhere, the ring had been purchased back, and was at least in defendant's control. It is proper to say that the defendant, in many particulars, makes statements contradictory of Franks and Stone; but his testimony is conflicting with itself in some important respects, which might very properly have reduced its weight and credibility. We can not, without extending this opinion unduly, go over, in detail, this voluminous evidence. When the purchase was made, it was under circumstances where no prudent man would purchase without inquiry. The defendant made none. If he was a judge of the value of the ring, he knew he was purchasing for one-fourth of its value; if he was not, common prudence would dictate that before making an honest purchase he would ascertain the value of the article bought, the means for which were readily at hand. The character of the person from whom he purchased would ordinarily put any one upon inquiry as to how he came into possession of such property. Moreover, when asked about the ring, and had it particularly described, and was informed of the larceny, he denied knowing anything about such a ring. Upon being requested to look it up, he pretended to do so, and, when pressed upon the subject, pretended that the absent Smith, whose whereabouts the subsequent search failed to

disclose, had it; that he had pawned it to her for a trifling sum, and she had agreed to keep *it for him* until he redeemed it; and subsequently admitted that his mother had furnished the money to redeem it from Smith. When no longer able to baffle the officers, he boldly admits he can produce the ring, but refuses to do so unless paid $20, and when finally arrested at the house of Watson he produces and surrenders the ring.

We are of opinion that the evidence fully warranted the jury in believing, beyond any reasonable doubt, that the ring was stolen, as alleged, and that the defendant did buy it for his own gain knowing it had been so obtained.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*