BERRY *v.* STATE

[No. 102, October Term, 1952.]

*Decided March 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Milton Talkin,* with whom was *Warren J. Weinberger* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *William C. Rogers, Jr.,* Assistant State's Attorney, on the brief, for appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

The legal sufficiency of the evidence to sustain a conviction for violation of the lottery laws was suitably challenged by the appellant in the Criminal Court and is the subject of inquiry on this appeal. Convicted by the judge, sitting without a jury, on the second count of an indictment, charging him with the keeping of a room for the purpose of selling lottery tickets, and on the fifth count charging unlawful possession of lottery paraphernalia, the appellant was sentenced to ten months in the Maryland House of Correction and was fined $1,000 and costs.

The State's testimony showed that on May 21, 1952, officers of the Baltimore City Police Department executed a lottery search warrant by entering the basement of 897 Park Avenue. The police discovered that there were two apartments in the basement, with a connecting bath room, the doors to which could not properly be closed or locked. Each apartment had a separate street entrance. A door on Biddle Street led to the rear apartment occupied by Alice Rehm, and a door on Park Avenue led to the front apartment occupied by Mamie Harris, the appellant's niece. One could go freely from one apartment to the other.

Normally, recitals in a search warrant are not admissible in evidence although testimony, if relevant to the issues, may be introduced even if it parallels matters alleged in the warrant. In this case the inquiry as to the basis for the warrant was opened by the defendant and followed up by the State and we need not concern ourselves with any question as to the propriety of any rulings on this testimony. Nor is any question raised as to the validity of the warrants.

On May 16, 1952, an officer had been sent to observe the premises at 897 Park Avenue. At different times between 12:30 and 1:30 P.M. he saw seven men approach the Biddle Street entrance, and after looking around, enter the basement and leave after a time interval of not more than three minutes. Similar events were observed by the officer during the same hour on the following day. A police lieutenant and an officer continued surveillance of the premises on May 20, 1952. In a short time seven men were again seen to enter the basement, the last of whom, the appellant, was stopped by another man. They held a conversation, and the officers testified that they saw the appellant withdraw a bundle of slips from his pocket which both men studied, and the appellant made some notations upon them and then entered the premises through the Park Avenue entrance. Undisputed testimony of the officers established that on all three occasions while the place was under observation, among those entering the premises was the defendant who used a key each time to gain access. Of signal importance was the testimony that some of those who entered through the Park Avenue door made their exit on Biddle Street, and that others who entered through the Biddle Street door emerged on Park Avenue. The officers returned a fourth time on the 21st armed with the search warrant. After completing the search and before leaving the premises, the lieutenant noticed the appellant standing outside the Park Avenue door and asked him to come in. In reply to the former's questions, the latter denied knowledge of a lottery and invited the

lieutenant to search his person. This invitation the officer accepted. No lottery tickets or other directly incriminating articles were found, but the search yielded a key to the Park Avenue door. Appellant told the lieutenant that his nephew had formerly occupied the apartment but that now his niece, Mamie Harris, was the occupant.

Summarizing, it may be said that the evidence discovered in the front apartment is very meager and standing alone probably constitutes an insufficient foundation for a conviction. The paraphernalia found in the rear apartment, however, shows a sizable lottery operation. The first question, therefore, is whether the appellant is properly chargeable with what the search produced in the rear apartment. We are of the opinion that the frequent appearances of the appellant while the tenants of both apartments were at work, coupled with his possession of a key affording him access to both apartments, would permit a rational inference that the appellant was in possession of the entire premises, and that the gambling activities which manifestly were there conducted were in fact his.

The recently decided case of *Yanch v. State*, 201 Md. 296, 93 A. 2d 749, may readily be differentiated from the instant one. There a woman was convicted along with her husband for possession of lottery paraphernalia found between sheets of newspapers on a piano in the public dining room of the tavern licensed to and operated by her husband. There was no evidence that the wife exercised any control in the tavern or was in possession of the gambling materials. Her mere presence as the proprietor's wife did not show her guilt. This court set aside her conviction.

The trier of the facts, the trial Judge, and not we, must decide what weight the circumstances should be given and whether the defendant's exculpatory testimony is to be believed. He testified that he had come to the premises to "look after" his niece's apartment. To accept or to reject this explanation was the province of

the trial Judge. Unless he was clearly wrong, his findings will not be disturbed on appeal. *Rule 7 (c) of the Criminal Rules of Practice & Procedure; Lambert v. State*, 196 Md. 57, 68, 75 A. 2d 327; *Edwards v. State*, 198 Md. 132, 151, 81 A. 2d 631, 639, 83 A. 2d 578; *Martini v. State*, 200 Md. 609, 614, 92 A. 2d 456; *Anello v. State*, 201 Md. 164, 169, 93 A. 2d 71. We are unable to say that the inference he made was either rationally inadmissible or clearly wrong. The trier of facts in a criminal case is enjoined by law to give due force to the presumption of innocence, and then to proceed cautiously in weighing the evidence; but he is not commanded to be naive and to believe without scrutiny every glib suggestion or far-fetched fairy tale whether emanating from State or defense. An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense. One who is found carrying the key to an active gambling establishment cannot complain on appeal if the trial court drew the obvious inference and disbelieved his "explanations".

We do not mean to relax in the slightest degree the strictness of the rule that requires evidence of a violation to be connected with the accused, for the inquiry is not merely whether a crime has been committed but also whether the defendant is the guilty person. The connection of the accused with the offense need not, however, be so strong as to amount to demonstration. If reasonable probability is found the evidence is admissible. *Hayette v. State*, 199 Md. 140, 144, 85 A. 2d 790, 792; *Lingner v. State*, 199 Md. 503, 507, 86 A. 2d 888, 890; *King v. State*, 201 Md. 303, 93 A. 2d 556. Its sufficiency is then for the judge or jury passing on the facts. Proof beyond a reasonable doubt upon the evidence as a whole is the measure they must require in order to convict, and it is a problem addressed to their judgment and conscience. The appellate court need not be convinced beyond a reasonable doubt in order to sustain a conviction; it has in the ordinary case a somewhat more restricted role. It is enough on appeal if the court is persuaded

that the trial judge, applying the established tests could fairly be· convinced beyond a reasonable doubt of the guilt of· the accused. *Edwards v. State, supra;· Shelton v. State,* 198 Md. 405, 84 A. 2d 76; *Estep v. State,* 199 Md. 308, 86 A. 2d ·470.

A subsidiary point argued by the appellant is that the indictment charges that the offenses were committed on May 21, the day of the arrest,· but that the proof showed as to possession of lottery paraphernalia that it occurred not on that day but on May 20 when it was testified by the police that he had certain papers in his possession, which may not have been sufficiently identified as lottery slips. He then argues, incorrectly we think, that the variance is material. *Ruble v. State,* 177 Md. 600, 11 A. 2d 455; *Yanch v.· State, supra.* We think, however, that there was evidence to sustain a finding of guilt as of May 21, on both the second and the fifth counts. We need not, therefore, inquire into the legal sufficiency of evidence of possession on the earlier date.

*Judgment affirmed with· costs.*