## STOKES *v.* STATE
[No. 112, October Term, 1952.]

*Decided April 16, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Leonard Niport* for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City* and *Theodore C. Waters, Jr., Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

George Grant Stokes, appellant, was charged in an indictment with rape, assault with intent to rape, and common assault on Verletha Johnson, an infant ten years of age. He was found guilty of the charge of common assault and from the judgment and sentence appeals to this Court.

The questions before us are, whether the trial judge erred in over-ruling appellant's motion for a directed verdict of not guilty, and whether the verdict of the trial judge, sitting without a jury, was clearly erroneous.

Verletha Johnson, ten years of age, had been living with Alethia Noel, her aunt, whom she called her mother, in Baltimore City ever since her birth. The appellant had been living in a common law relationship with Alethia Noel since April 1952. The appellant stopped

living with Alethia Noel in June 1952 because he found she had tuberculosis. She admitted that she was angry with him for leaving her. On August 19, 1952, Alethia Noel and Verletha Johnson went to see Violet Hill Whyte, a policewoman in Baltimore City, as a result of which the appellant was arrested. Miss Whyte testified that in her presence and in the presence of Alethia Noel, Verletha Johnson stated to the appellant that over a long period of time when Alethia Noel, her foster mother, went to work and the appellant remained in the home "he would get on top of her and attempt to go in her body". Miss Whyte further said that she warned the appellant of his rights, gave him information in detail about the offense for which he was charged, and asked him if he would be willing to discuss the case with her. She testified that Alethia Noel explained the delay in reporting what the appellant had done to the child by saying that she did not want to tell the truth about the appellant. The appellant told Miss Whyte that he was unwilling to give her any information about the case. He told her he was legally married to a woman who lived in Boston from whom he had been separated quite a long time. He admitted that he had been intimate with Alethia Noel. "He didn't call himself living common law, he said because he went and came." He admitted that Verletha was in the home; that he called her by a nickname "Mickey"; that he was in and out of the house and gave money for the home but would not discuss the offense for which he was charged. He made no answer to the accusation made against him by the child in the presence of Miss Whyte and Alethia Noel and said he did not care to make a statement about it.

Alethia Noel testified that before June 3, 1952, the appellant called her on the telephone and told her that the accusation against him for tampering with the child was not true and that if he did it he was drunk. He told her to take the child to the doctor and he would pay for it. She suggested that he give her a statement in his own handwriting. She said he had rented a

room from her in May, 1952, and at the time of the trial on October 6, 1952, she was two or three months pregnant by the appellant. On June 3, 1952, the appellant wrote the following letter which was admitted in evidence:

"Dear Alethia:

"I am complying with your request because I want you to have an understanding. Alethia, I was wrong, and I have told you so. I also said that I will pay for all the hospital bills as well as take care of you and Mickey. I don't remember the date that it happened but it was about two or three weeks ago I played around with Mickey while drinking. I will pay all bills for you and Mickey. If there is any more you want me to say please call me and let me know.

Sincerely yours, with love

George Grant Stokes."

Alethia said that she and appellant "broke up" the first part of June, 1952, and that she became angry after she found out definitely what he did to Verletha. Alethia wrote a letter to the appellant at the Baltimore City jail on September 17th, 1952, in which she professed her love for him. She said the appellant sent her $200.00 about a week before the trial of the case. She further said that she had taken Verletha to the University Hospital six times in July, 1951. The doctors reported that there had been an old partial penetration of the hymen.

Verletha Johnson testified on direct examination that she had known the appellant for several months and that the appellant lived in the home with her and Alethia Noel. She said she had intercourse with the appellant on the bed in his room about five times, the last time being June 3, 1952. She said she did this because the appellant compelled her to do so. She further testified that she made no report of it because appellant told her not to tell. On cross examination, when asked why she

told the magistrate at the preliminary hearing that the appellant had intercourse with her fifteen times, she said her mother told her to say this. She further testified on cross examination that neither she or her mother liked the appellant; that he never forced her to do anything; that she did not know what intercourse was; and that her mother told her to say that appellant did something to her, while in fact he never did anything to her and "never fooled" with her at all. On redirect examination she again testified that appellant had intercourse with her on June 3, 1952, on the bed while she was dressed. She further said that she had on a pair of overalls and a T shirt; that she "took and put on a clean pair of pants and washed the ones I had".

The appellant testified that he had had "relationship" with Alethia Noel, who is the foster mother of Verletha Johnson. He said he had supported them as a husband would. He said he "broke up" with Alethia in May of 1952 because she had tuberculosis. That is why he sent the letter that he would support her and the child. He denied that he had ever had intercourse with Verletha or that he had ever attempted to have intercourse with her or had treated her in any unnatural way. He said the reason he would not talk to Miss Whyte was because he wanted to confer with a lawyer. He admitted that in 1936 he was convicted of burglary and placed on probation for one year, and in 1946 was convicted of burglary and receiving stolen goods and served five years, having been released from prison on April 20, 1951.

Rule 7(c) of the Criminal Rules of Practice and Procedure provides that when a criminal charge is tried by the court sitting without a jury, upon appeal, the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, but the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credi-

bility of the witnesses. This rule, of course, does not permit the Court of Appeals to reverse a judgment of conviction merely because our conclusion on the record may be different from the conclusion of the trial court. It was adopted to prevent a miscarriage of justice by permitting the trial court to take away the life or liberty of an accused through manifest error without the possibility of appellate review. *Lambert v. State,* 196 Md. 57, 67-68, 75 A. 2d 327, 332; *Edwards v. State,* 198 Md. 132, 151, 81 A. 2d 631, 639-640. It was said by this Court in the case of *Edwards v. State,* 198 Md. 132, 157-158, 83 A. 2d 578, 581, decided October 5, 1951, on motion for reargument: "* * * In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved. In a civil case the fact must be shown, or the inference supported, by a preponderance of probability or an opposite preponderance must be overcome. In a criminal case the fact must be shown, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. The difference in degree of proof is ordinarily for the triers of facts." This rule has been restated many times since by this Court.

In reviewing the evidence in this case, although the prosecuting witness, Verletha Johnson, on cross examination testified that the appellant had never molested her at any time, we must consider that she was a child of only ten years of age, and that on her redirect examination she again testified that the accused had had intercourse with her. Also her testimony as to the necessity of changing and washing her clothes is convincing. The doctors reported a partial penetration. This Court cannot say that the motion for a directed verdict should have been granted or that the trial judge was clearly erroneous in reaching his verdict when the appellant in his letter of June 3, 1952, admitted that he was wrong and about two or three weeks previously had "played

172

around" with the child while drinking and agreed to pay all hospital bills for her. The trial judge and not the Court of Appeals must decide whether the appellant's testimony is to be believed. *Berry v. State*, 202 Md. 62, 95 A. 2d 219.

*Judgment affirmed, with costs.*