## BRADLEY v. STATE

[No. 145, October Term, 1952.]

*Decided May 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William H. Murphy* and *W. A. C. Hughes, Jr.,* for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Julius A. Romano, Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Henry Bradley from a judgment and sentence for violation of the lottery laws in a trial before the trial judge without a jury.

The appellant was driving his automobile on Henrietta Street in Baltimore City on August 21, 1952, about 12:45 P.M. Officer Charles Stephan, a foot patrolman who had previously served on the Vice Squad and was familiar with lotteries, was patrolling his beat near the intersection of Henrietta and Howard Streets. He testified as follows: At that time he observed an automobile driven by the appellant making a right hand turn from Sharp Street into Henrietta Street. He stopped the car and told the appellant he was driving on the wrong side of the street. Appellant, having stopped his car, backed up so he was then on the proper side. Officer Ernest Shephard, another foot patrolman, then arrived at the scene. Officer Stephan then told appellant: "You were driving on the wrong side of the street. You didn't pay any attention to the intersection at Plum Alley." Appellant seemed very nervous and opened the car door and put his foot on the frame of the car. Officer Stephan then said to him: "Let me see your cards." Appellant got out of the car, reached in his right hand pocket and pulled out a white handkerchief, his registration card, and his driver's license. As he handed these cards to Officer Stephan a white paper fell to the ground. Officer Shephard, who was standing back of appellant, picked up the paper and looked at it. Officer Stephan looked at the registration card and driver's license and Officer Shephard handed him the paper which Officer Stephan identified as "adding machine lottery tapes." Officer Stephan asked appellant why he dropped the tapes, to which he replied that the tapes were not his and he did not know how they got on the ground. The officers then placed appellant under arrest and drove him to the Southern Police Station. He was there searched by the turnkey and sixteen money wrappers and $3.00 in cash were found on him. Lieutenant Dickerson then said to appellant: "These are lottery tapes? What were you doing with them?" Appellant replied: "I just had them on me at the wrong time." At the police station he was charged with the lottery violation and

with driving on the wrong side of the street. Officer Stephan said appellant was actually charged with the lottery first because he did not have the time then to write out the traffic summons. The appellant was found not guilty of the traffic violation before Magistrate Levinson. Officer Stephan denied that he removed the lottery tapes from appellant's pocket.

Officer Shephard testified that he heard Officer Stephan accuse the appellant of driving on the wrong side of the street and then saw Officer Stephan standing beside the car. When he arrived Officer Stephan was asking the appellant for his registration card and driver's license. Appellant reached into his right hand pocket. As he did so he withdrew a handkerchief and two cards and slips of paper fell to the ground. Officer Shephard stooped down and picked up the papers and handed them to Officer Stephan. Officer Stephan said: "Shep, they are lottery tapes." Officer Shephard said he had never had any previous knowledge or experience in lottery cases. Appellant denied that the tapes belonged to him. Officer Shephard confirmed the statement made to Lieutenant Dickerson by the appellant.

Sarah Mercer, for the appellant, testified that she saw Henry Bradley driving the car on this particular occasion and that the entire vehicle was being operated on the right side of the street. She did not see the officer when he first stopped the appellant but saw them talking together. She said she did not know what the officer was saying to Bradley because she was too far away to hear but she noticed the appellant walk to the front of the car and turn around. Another officer (Officer Shephard) then came on the scene and searched Bradley and patted his pockets. She said: "As I remember he went into Mr. Bradley's right hand pants pocket." She could not see what he took from the pocket. He did take something "because he looked at it." She did not see anything fall from appellant's pocket. During all of this time she was "a little over half a block away" from the appellant.

Mildred Page, testifying for the appellant, said she saw Bradley after the officer had stopped him and at that time the officers were searching the car, one on one side and one on the other. She did not say how near she was to the car.

Appellant claims that the trial judge erred in admitting the lottery tapes and money wrappers in evidence because the arrest was unlawful, in that he was found not guilty of the traffic violation by the magistrate, and further that the evidence was not sufficient to sustain the conviction.

Chapter 687 of the Laws of Maryland of 1916, Article 56, Section 162, (1939 Code), License to Operators, provided in part: "Said license certificate shall at all times be carried by the licensee when he is operating a motor vehicle upon the highways of this State, and shall be subject to examination upon demand by any officer of the law, and said license shall have endorsed thereon in the proper handwriting of the licensee, the name of said licensee, and, when requested by a proper officer, in the discharge of his duties under the law, said licensee shall write his name in the presence of said officer, to the end that the identity of said licensee may be determined, provided that no operator of a motor vehicle shall be stopped by any officer of the law for the sole purpose of exhibiting his operator's license." By Chapter 1007, of the Laws of Maryland of 1943, Article 66½, Section 96, (1951 Code), the hereinbefore quoted Act was repealed and re-enacted in substantially the same form but there was omitted the provision "provided that no operator of a motor vehicle shall be stopped by any officer for the sole purpose of exhibiting his operator's license."

Code 1951, Article 35, Section 5, the Bouse Act, provides, with exceptions not relevant here, that no evidence shall be admissible in a trial of a misdemeanor which has been procured by an illegal search and seizure. However, if a misdemeanor is committed in the presence of an officer who is charged with the en-

forcement of the law he is authorized without a warrant to arrest the offender. As an incident of this arrest he is authorized to search the arrested person and to seize and take into possession and examine the tangible evidence or instruments of the crime whether upon his person or within his immediate possession. If the arrest was lawful the search was lawful and the articles found on him were admissible in evidence. *Callahan v. State,* 163 Md. 298, 300-301, 162 A. 856; *Fischer v. State,* 195 Md. 477, 481-482, 74 A. 2d 34, 36 and cases there cited.

Officer Stephan, according to his testimony, believed that the appellant was violating the law in driving on the wrong side of the street. Even though it was later determined that appellant was not committing a traffic violation at that time, the officer had reasonable grounds to stop the appellant and ask for his operator's license. Code, Article 66½, Section 96, supra. When appellant showed his license, according to the testimony of the two officers, which was worthy of belief by the trial judge, the lottery tapes fell out of his pocket. Appellant having violated the lottery laws by having this lottery paraphernalia in his possession, (Article 27, Section 429, 1951 Code), and this occurring in the presence of the officers, they were authorized to arrest him without a warrant and to search his person and the car occupied by him, in order to find and seize things connected with the crime as the means by which it was committed, and the articles so seized were properly admissible in evidence.

Two members of the Baltimore Police Force having testified that the lottery tapes fell out of appellant's pocket and that appellant admitted to Lieutenant Dickerson that he had these tapes at the wrong time, and the only testimony to the contrary being that of a witness who under her own admission was more than half a block away from the scene, we cannot say that the trial judge was clearly wrong in finding the appellant guilty of the crimes charged. The trial judge and not this Court must decide what testimony is to be believed.

*Berry v. State,* 202 Md. 62, 95 A. 2d 319; *Stokes v. State,* 202 Md. 166, 95 A. 2d 871.

*Judgment affirmed, with costs.*