# JORDAN *v.* STATE

[No. 65, September Term, 1958.]

38

*Decided February 12, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *William T. Speer* and *Joseph G. Lindamood, Jr.,* for the appellant.

*Charles B. Reeves, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Blair H. Smith, State's Attorney for Prince George's County,* and *Frank P. Flury, Deputy State's Attorney for Prince George's County,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by George Thomas Jordan from the judgment and sentence of the Circuit Court for Prince George's County upon his conviction by the court, sitting without a jury, of receiving stolen property of the value of $100 or upwards.

The defendant was arrested on March 7, 1958, and charged with the larceny of a motor vehicle owned by John C. Clifford of the value of $1200 to $1500. On April 2, 1958, while awaiting possible indictment by the grand jury, the defendant filed a petition and suggestion, pursuant to the terms of Code (1957), Art. 27, Sec. 592, wherein he waived his right to indictment and sought immediate trial on a criminal information. The information contained three counts—larceny, receiving stolen property and unauthorized use. When arraigned, he entered a general plea of "not guilty." At the close of the State's evidence, the defendant moved for a directed verdict of not guilty, which was overruled; and at the close of the whole case the motion was renewed and again overruled. The verdict of the court was not guilty of larceny and unauthorized use, but guilty of receiving. He was sentenced to a term of five years in the Penitentiary.

On the evening of March 6, 1958, at approximately 7:30 p. m., Clifford parked his automobile in the Eastover Shopping Center. When he returned about an hour later it was gone. At 2:30 a. m. in the morning following, while he was on a routine patrol, Pvt. John Nagy of the county police department, observed the automobile of the defendant which

had become mired when it was being backed into a pathway in the woods along the 5800 block of Oxon Hill Road in or near Seat Pleasant. As the officer drove up, the defendant came out of the woods to the left of the mired vehicle and requested the officer to tow his automobile out of the mud. When approaching the defendant's vehicle, the officer noticed a floor mat under the right rear wheel; and in flashing his light around he picked up a reflection from an object about fifty or seventy-five feet farther in the woods along the pathway into which the defendant had backed his automobile. Upon investigation, the officer discovered the stolen automobile, or what was left of it. The vehicle had been almost completely stripped. The hood, back seat, back bumper, wheels, radiator, battery, coil and parking and dome lights had been removed. All removed parts, except the back seat and hood, had been stacked in a "neat pile" at the rear of the stolen vehicle. The floor mat had also been removed but it was not included in the pile. Other than the mat, no parts of the stolen vehicle were found near, in or on the defendant's automobile, and the floor mat of the defendant's automobile was in place.

When walking back to make an examination of the stolen car, Nagy heard a "thump" behind him and, upon turning, saw Jordan standing near the right side of his (Jordan's) car. The officer returned to Jordan's automobile and noticed that the floor mat, which had been under the right rear wheel, was no longer there. The defendant refused to answer a question as to its whereabouts; but the officer discovered it about 15 feet to the right of Jordan's car.

The officer attempted to interrogate the defendant while they were still in the woods, but Jordan "just buttoned his lip and wouldn't say nothing," and, at Police Headquarters he refused to talk with the detectives on the ground that he was "too sleepy."

An examination of the stolen car disclosed no fingerprints, but there were marks identified as made by leather gloves. A pair of leather gloves found under the seat of the defendant's automobile were introduced in evidence, although Nagy

testified that it was impossible to tell if they were the leather gloves which had made the marks on the stolen car.

Officer Nagy, who was called as a witness by both the State and the defense, further testified that on the populated side of the road there was a driveway "approximately every hundred feet." On the wooded side of the road there is a shoulder which he estimated to be ten feet in width, at least wide enough to accommodate a parked car. Beyond the shoulder was a "drop off" of about 16 inches. The defendant's automobile had been backed off the road about 10 or 15 feet.

It was conceded by all of the witnesses that Jordan's car was mired at the place where Officer Nagy first saw it. There were two sets of automobile tracks on the "path"—one set led to the stolen Clifford car and the other set ended at the place where the defendant's vehicle had come to rest. Marks on the highway indicated that one car "made a left hand turn and went directly into the woods" while another set of tracks "came up the dirt portion of the road approximately twenty feet and backed up into" the path.

The defendant testified that he had driven his "girl friend" to her sister's residence about 2:30 a.m. and had then proceeded along Oxon Hill Road to return to the home of his mother, with whom he was living, in Pomonkey. He realized that, although he "wasn't going in the wrong direction," it would be "nearer home" if he turned around and took another route. He said that he intended to turn into one of the driveways on the populated side of the highway, which lay to his right but "kind of missed the driveway" and backed up to turn around. In some manner which he did not make clear, this maneuver brought his automobile to the opposite side of the road, i.e., the wooded side. He noticed that other vehicles were approaching him and that there "was kind of a driveway, old road" behind him. Although he intended to remain on the road, he backed farther "to avoid an accident" and the rear wheels of his car dropped over the "drop off" on the far side of the shoulder. At this time, his automobile was "about three feet" from the road itself.

Jordan stated that he found he could not pull his car forward and got out with a flashlight to ascertain the difficulty.

He discovered that his left wheel was on solid ground but that his right wheel was spinning and "wouldn't catch hold." He thought that if he could find something to put under the wheel, he could back up farther to get enough traction to "spin out." In looking for an object to put under his wheel, he spied the floor mat lying on the edge of the woods and placed it under the right rear wheel. At this moment, he testified, Officer Nagy pulled up, and he requested the officer to help him get out of the mud.

The defendant further stated that when the officer went to investigate the stolen car he (Jordan) started his motor in a further attempt to get out of the woods and upon the highway (a fact flatly denied by the officer), and he didn't know how the mat got where the officer found it but he "assumed" that when he started his motor "it may have done it." He flatly denied that he stole Clifford's car, or that he had any connection with it, other than using the floor mat. He stated that the gloves found in his car were necessary in his work.

He also testified that two detectives examined the gloves and his clothes at the scene of the stolen car and found them "clean." This fact is not disputed in the testimony. On cross-examination, he admitted a series of convictions for larceny and robbery in this State and other jurisdictions.

The facts and testimony have been set forth at some length as there was a motion for a directed verdict.

The defendant assigns four grounds of error: (1) that there could be no finding of guilt under the waiver of indictment in that the waiver referred to "motor vehicle larceny," a felony, and he was convicted of receiving stolen goods, a misdemeanor; (2) that the evidence was insufficient to convict him of receiving stolen goods; (3) that assuming the correctness of the findings by the lower court, these facts did not constitute the crime of receiving stolen goods; and (4) that the floor mat was the only stolen property in the actual possession of the defendant and therefore the sentence of five years was not permissible; because such a sentence is permitted only when the value of goods stolen is in excess of $100.

## I

There is no merit in the first contention. All of the arguments advanced by the defendant in this Court were fully answered in *Heath v. State,* 198 Md. 455, 85 A. 2d 43; besides, he made no objection to the trial on the information in the lower court and thereby waived any right that he may have had to a trial on an indictment. *Heath v. State, supra.*

## II, III and IV

These contentions of the defendant may be considered together. Our statutes, Code (1957), Article 27, Sections 466 and 467, do not define the crime of receiving stolen property, they merely prescribe the punishment therefor. *Henze v. State,* 154 Md. 332, 140 A. 218. It is generally recognized that four elements are necessary to constitute the offense: (a) the property must be received; (b) it must, at the time of its receipt, be stolen property; (c) the receiver must have guilty knowledge that it is stolen property; and (d) his intent in receiving it must be fraudulent. Clark & Marshall, *Crimes* (6th ed.), Sec. 12.37; Hochheimer, *Criminal Law,* (1st ed.), Sec. 787.

## (b) and (d)

*Property must be stolen and intent fraudulent.* These two elements may be disposed of summarily. Clifford testified flatly that his car was stolen and there was no denial of the same; therefore a finding that it was stolen was amply justified. And, while the fraudulent intention of the receiver of stolen goods is an essential element of the offense, as pointed out above, that intention need not be *lucri causa,* but one merely hostile to the title of the true owner. *State v. Hodges,* 55 Md. 127, 136. The defendant here denied any connection with the property stolen, so, if it be found that in fact there was a connection and that connection supports the presence of the other elements of the crime, there can be no doubt as to his intention with regard thereto.

## (a)

*Property must be received.* The receipt of stolen goods is a question to be determined from the circumstances indicating

whether dominion and control thereof have been transferred to the person accused of being the receiver. This question was recently considered in *Polansky v. State*, 205 Md. 362, 109 A. 2d 52, where it was said, at page 366:

> "Manual possession is not necessary to constitute receiving. However, one is guilty of so receiving as soon as one obtains a measure of control or dominion over the custody of the goods. And such receiving may be by an agent or through the instrumentality of another. It is not necessary that the accused should have actually seen the goods."

In that case it was held that there was sufficient evidence of possession where the facts showed that the defendant, though never in proximity to the stolen goods, had directed their distribution to several persons. And, even where actual possession is alleged, it is unnecessary to prove the possession by direct or visual observation thereof; provided the facts and circumstances established are sufficient to support a reasonable and rational inference of such possession.

In the instant case, these facts stand out prominently: that the defendant was found, in the early hours of the morning, on a pathway (not a public highway) in a wooded area just a few feet from where the stolen property had been taken; that the stolen property was necessarily taken there a very short time prior thereto; that the stolen car had been dismantled; that the defendant admitted actual possession of the floor mat and that he had seen the stolen car in the woods; that the defendant was coming out of the woods to the left of his car when the officer arrived (a fact testified to by both the officer and the defendant), although the defendant testified elsewhere that at the time he had completed the purpose for which he had left his car, namely, to place the mat under the right rear wheel; that glove marks were found upon parts of the stolen car and gloves were found in the defendant's automobile, although no positive identification of the marks as having been made by the defendant's gloves could be made; that the physical facts—the removal of the stolen vehicle from where the owner had left it and its dismantling

to the extent that it was—in such a short period of time, just a few hours, together with the further fact that the defendant's hands and gloves were clean, clearly indicated, as found by the court, that there was more than one person involved in the larceny and dismantling of the stolen car; and that there was not a shred of corroboration of the fact that he had taken his "girl friend" home, or that he had one who lived in the community.

Of less significance, perhaps, but matters that could have been considered by the trier of facts were the possession of the flashlight and the fact that the defendant had backed his car into the pathway. They were, at least, consistent with the theory that the defendant went to the scene of the dismantled vehicle for the purpose of removing parts thereof, and, in case of an emergency, a quicker exit could be made with his car headed toward the highway than if he were required to back out.

His very implausible account of his close position with relation to the stolen vehicle, together with his previous convictions of serious crimes which the trial court was entitled to consider in weighing the defendant's testimony, may well have led the court to conclude that his story was concocted out of the whole cloth. His story about an attempt to turn around although he "wasn't going in the wrong direction"; the maneuver which resulted in his winding up upon the opposite side of the highway, where there was no convenient place to turn around, when by his own admission he stated, "of course there were numerous places where I could have pulled off"; his terminal point 15 feet off the road as the result of an attempt to avoid oncoming traffic where it appeared that the shoulder was sufficiently wide to accommodate his automobile; and the "coincidence" of finding himself on the only path in an otherwise wooded area justified the trial judge in not believing the defendant's explanation as to why he was found at the scene of the stolen car.

Viewed as a whole, the evidence warranted a finding by the court below that the defendant was in actual possession of the floor mat, and, at the very least, justified a rational inference that he was also in constructive or potential pos-

session of the remainder of the stolen vehicle within the rule stated in the *Polansky* case, *supra*. Cf. *Debinski v. State,* 194 Md. 355, 360, 71 A. 2d 460. In this regard, excerpts from two previous opinions of this Court seem apposite here. They are from *Berry v. State,* 202 Md. 62, 67, 95 A. 2d 319 and *Hayette v. State,* 199 Md. 140, 144, 85 A. 2d 790, respectively, and they state:

> "The trier of facts in a criminal case is enjoined by law to give due force to the presumption of innocence, and then to proceed cautiously in weighing the evidence; but he is not commanded to be naive and to believe without scrutiny every glib suggestion or far-fetched fairy tale whether emanating from State or defense. An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense."

> "To prove guilt beyond a reasonable doubt it is not necessary that every conceivable miraculous coincidence consistent with innocence be negatived."

The appellant, however, further argues that even if the evidence were sufficient to justify an inference that he was in possession of the stolen vehicle, the court could not find him guilty of receiving stolen goods, because the law presumes that one in the possession of recently stolen goods is the thief. *Debinski v. State, supra,* 194 Md. at page 360; *Daniels v. State,* 213 Md. 90, 103, 131 A. 2d 267. It is true that recent and exclusive possession of the fruits of crime, if unexplained or explained falsely, justify the inference that the possessor is the criminal; but the inference of guilt to be drawn from possession alone is never one of law, it is an inference of fact. *People v. Galbo,* 112 N. E. 1041, 1044 (N. Y., 1916).

In the case just mentioned, Judge Cardozo, in his customarily lucid and able style, dealt with the principle here involved. There, the defendant had been convicted of murder in the second degree, a finding which required the defendant, if not the perpetrator of the crime, to be at least an accessory before the fact. The evidence clearly established that the defendant was not the actual murderer, but, shortly after the

murder, he was seen to take the body into the country and conceal it, a fact which the defendant falsely denied. The state was unable to prove where or when the crime was committed, or to connect the defendant therewith, other than his possession and concealment of the body. The Court held that if the circumstances make one inference just as reasonable as the other, the defendant should be given the benefit of the conclusion that would mitigate his guilt, which would permit a finding of guilt as an accessory after the fact but not as a principal. During the course of his opinion, Judge Cardozo gave an illustration that seems particularly relevant here. It was:

> "Only half of the problem, however, has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief. * * * But as soon as evidence is offered that the theft was committed by someone else, the inference changes, and he becomes a receiver of stolen goods. *Goldstein v. People, supra; People v. Friedman,* 149 App. Div. 873, 877, 134 N. Y. Supp. 153; 2 Russell on Crimes (6th ed.) p. 287 *et seq."* (Italics supplied.)

In the case at bar, we think, as we have indicated above, that the trial judge was justified in finding that there were more persons than one involved in the larceny of the stolen vehicle, and the fact that the defendant's hands and clothing were clean so shortly after the stolen car had been dismantled made the inference that he was a receiver just as reasonable as the inference that he was the thief, or one of several thieves; hence the court was correct in giving the defendant the benefit of the conclusion that would mitigate his guilt, namely, that he was a receiver of the stolen property and not the thief. This is no more than an application of the broad principle of the criminal law that when there is a rea-

sonable doubt as to which of two or more crimes the accused has committed or where there is a reasonable doubt in which of several degrees a defendant is guilty, he can be convicted only of the least serious crime or the lowest degree.

The case of *State v. Fowler*, 188 S. E. 137 (W. Va., 1936), although somewhat analogous to the instant one, is not directly in point here. There, the conviction was under a statute of the State of West Virginia, which the Court said must be strictly construed. The stolen automobile had been left in an open field a number of miles from the defendant's home not far from a public road. The state proved the theft of the car, possession of parts therefrom by the defendant (the opinion does not state how long after the larceny of the car) and the proximity of the defendant to the field where it had been left on one occasion. The defendant proved that the car had been wrecked stating that he was attracted to it when passing on the road. When he first saw it the engine had been removed. He admitted taking parts therefrom, but claimed that he did so openly as there were other stripped cars nearby. The Court held that since the car was in view from the public road, the mere fact that the defendant observed it did not imply a prior delivery .to him by another person; and, no matter what crime, if any, the defendant had committed, the state had failed to prove that he had received the stolen goods from another person under the statute of West Virginia.

## (c)

*Knowledge that the property is stolen.* Having decided above that the trial court was justified in finding that the defendant was in possession of the stolen automobile, this question will need no extended discussion. It has been stated that while the cases are not in complete harmony on the question of the effect of the unexplained possession of recently stolen goods by one charged with unlawfully receiving them, some jurisdictions holding that proof of mere naked possession of property recently stolen, not aided by other proof, is not sufficient to show guilty knowledge, all the courts are agreed that such possession is a strong circum-

stance to be considered, with all the other evidence, on the question of guilty knowledge. Anno. 68 A. L. R. 187. See also *Wertheimer v. State*, 68 A. L. R. 178, 184 n.1. (Ind. 1929). Cf. Anno. 147 A. L. R. 1058. We agree that such possession is a strong circumstance to be considered with the other evidence on the question of guilty knowledge; and, it is unnecessary in the instant case to determine whether such possession, standing alone, is sufficient to sustain an inference of guilty knowledge.

In Maryland as elsewhere guilty knowledge is one of the essential elements of receiving stolen property, but it is not necessary that such knowledge be direct or actual, it being sufficient if circumstantial and inductive, and the receiver believed or reasonably suspected, from the circumstances of the transaction, that the property was stolen. *Henze v. State, supra,* 154 Md. at page 341; Cf. *Anello v. State,* 201 Md. 164, 168, 93 A. 2d 71. It would stretch the credulity of the credulous to believe that an automobile, which had been stolen just a few hours earlier and was located off a pathway in a wooded area in a completely dismantled condition, was received by the defendant at a time when he did not know, or have reason to believe, the property was stolen. We hold that the facts and circumstances proved were sufficient, if in fact they do not impel, the inference that the defendant received the automobile with guilty knowledge.

Thus, it is seen that the evidence produced and the reasonable and proper inferences from such evidence permitted a finding of all the essential elements and factors of the offense of which the defendant was found guilty. The evidence also established the value of the car as being in excess of $100; hence the sentence imposed was within that permitted by the statute.

*Judgment affirmed, with costs.*

HORNEY, J., filed the following dissenting opinion.

The majority of this Court, in affirming the conviction of George Thomas Jordan (the defendant) of receiving a stolen automobile of the value of $1500, based its conclusion on the

50

fact that the trial court was not clearly wrong when it found that the possession by the defendant of the floor mat out of the stolen automobile, plus certain other evidence and inferences from evidence—set forth in detail in the majority opinion—was sufficient to support the finding by the court that the defendant was guilty of receiving stolen property of the value of $100 or upwards.

In addition to the possession of the floor mat, there was evidence that seven hours after it was stolen, the dismantled automobile was found in the woods about fifty or seventy-five feet from the defendant, who had backed his automobile into the woods road and mired it while attempting to turn around. He stated he had found the floor mat at the edge of the woods and had put it under a rear wheel of his automobile to gain traction. His effort failed, but he was so engaged when the police officer drove up, and he came out of the woods and requested the officer to tow his automobile out of the mud. His automobile had not been any further in the woods than the point where it was mired. Other than the mat, no other parts of the stolen vehicle were found near, in or on the automobile of the defendant. When questioned, he denied that he had stolen the dismantled automobile or had "had anything to do with it." Other than to explain his possession of the mat and his denial of the theft, he refused to say anything, but he did admit previous convictions of larceny and robbery. His flashlight was on his person and a pair of "working" gloves was found under the seat of his automobile. An inspection of his hands and clothing at the police station showed they were clean.

Since the unexplained possession of stolen property is evidence of guilt of larceny [*Debinski v. State,* 194 Md. 355, 71 A. 2d 460 (1950)], there is no reason why the possession of stolen property should not also be evidence of *receiving* such property from another, and cast the burden on the possessor to give a reasonable explanation of how he came into the possession thereof, when there is legally sufficient evidence to prove the other three essential elements of the offense of receiving stolen property, but, in this case, I cannot agree that such other evidence was sufficient for that purpose.

In this State, the essential elements of the crime of receiving stolen property are: (i) the receiving from another, (ii) of the property stolen from its owner, (iii) knowing it to have been stolen; and (iv) a corrupt or dishonest intent. See Hochheimer *Crimes and Criminal Procedure* §§ 787-791 ("States Attorneys'" Ed. 1897). See also Code (1957) Art. 27 § 466.

The record, as I read it, shows that the motor vehicle *was* stolen from its owner [element (ii)]. But proof that the defendant received the stolen property from another [element (i)] is by no means certain, and there is virtually no proof that the defendant knew the floor mat (not to mention the automobile or the *parts* to which it had been reduced) had been stolen [element (iii)]. Nor is there any proof of a corrupt or dishonest intent [element (iv)], which is a relatively unimportant factor in this case, and will not be considered further herein.

Even though we accept the theory that possession of the floor mat was evidence that the defendant had received it from another [element (i)], there is no legally sufficient evidence that he *knew* it had been stolen [element (iii)], which, it has been held is the gist of the offense and must be shown to exist at the time the property was received. *Huggins v. People,* 135 Ill. 243, 25 N. E. 1002 (1890). See also Hochheimer *op. cit. supra* § 790. The defendant claimed that he had found the floor mat at the edge of the woods, but the trier of facts obviously did not believe him. However, be that as it may, it is clear that mere possession without proof of guilty knowledge is not enough to convict the defendant of receiving stolen property.

The courts are by no means in agreement with respect to the effect of possession of recently stolen property in *receiving* cases. All agree that such possession is a powerful circumstance to be considered, but none hold that mere possession, without other evidence, is sufficient to prove guilty knowledge. See *Wertheimer v. State,* 201 Ind. 572, 169 N. E. 40 (1929); Annotation, 68 A. L. R. 187 (1930). Generally, the inference is that the possessor is guilty of larceny, not receiving. See 32 Am. Jur. *Larceny* § 140 [Pos-

session of Stolen Goods]; 45 Am. Jur. *Receiving Stolen Property* § 18; *Wertheimer v. State, supra.*

In this State, however, where receiving stolen property is a separate and distinct substantive crime—not merely accessorial—it is not necessary that the defendant have direct or actual knowledge that the property was stolen. It is sufficient if guilty knowledge may be gleaned from circumstantial evidence, or inferred therefrom, to the effect that the receiver believed or could have reasonably suspected from the circumstances that the property was stolen. *Henze v. State,* 154 Md. 332, 140 A. 218 (1928). But there must always be some evidence from which a legitimate inference of guilty knowledge may be drawn. Other than his propensity to steal and the nearness of the stripped vehicle to the place where the automobile of the defendant was mired, there was no evidence which could have put him on notice, or have led him to believe, or even suspect, that the floor mat had been stolen. Of course, it has been held that proof of manual possession of stolen property is not necessary to convict and that a receiver is guilty of *receiving* as soon as he obtains a measure of control or dominion over the custody of the property stolen. *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954). Yet in this case there has been no proof that the defendant had *any* measure of control or dominion whatsoever over *the other parts* of the stolen vehicle. There was, in fact, no *proof* that he had been further in the woods than where his automobile was mired. He admitted seeing the back of the stolen vehicle but there was no *proof* that he knew the removed parts were in the woods. And, which is more important, there was not a scintilla of evidence to *prove* or even suggest that the defendant knew the floor mat and other parts had been stolen.

On the issue of guilty knowledge, the majority, in their opinion, conclude that the defendant *received* the completely dismantled automobile at a time when he knew, or had reason to know, the property was stolen, and hold that "the facts and circumstances proved" were sufficient to draw, if they do not impel, an inference of guilty knowledge, but nowhere in the opinion is it pointed out how or when or under what

circumstances the defendant had *acquired any knowledge whatsoever* that the floor mat or other parts had been stolen. And, so far as I can find, there is no evidence in the record from which a legally sufficient inference may be drawn that the receiver believed or could have reasonably suspected from the circumstances that the floor mat was stolen when it was not even shown—other than by the inference which arose when he gave an illogical explanation as to how he had acquired possession of the floor mat—that the defendant was the *receiver* instead of the *thief*. But the *right* to infer receiving from an unreasonable explanation of possession does not support a further inference that the possessor also received the stolen property "knowing it to have been stolen." The "third" element must be proved by other direct or circumstantial evidence or legitimate inferences therefrom.

The lack of evidence legally sufficient to prove guilty knowledge compels me to believe that the *only* legitimate inference which may be drawn from such evidence as the record contains, incredible as it may seem, is that the presence of the defendant at the place the police found him and his mired automobile was no more than a coincidence. For this reason, I am convinced that the judgment should have been reversed.