# DAVID EDWARD MOWEN v. STATE
# OF MARYLAND

[No. 305, September Term, 1970.]

*Decided March 31, 1971.*

The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*Howard W. Gilbert, Jr.,* with whom was *Paul Ottinger* on the brief, for appellant.

*John P. Stafford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *David K. Poole, Jr., State's Attorney for Washington County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, David Edward Mowen, was convicted by a jury in the Circuit Court for Washington County, Judge Irvine H. Rutledge, presiding, of receiving stolen goods. He was sentenced to imprisonment for one year.

On appeal, he contends:

(1) That the trial judge erroneously denied his motion to suppress the evidence obtained from the search of his truck at the time of his arrest, and

(2) That the ownership of the allegedly stolen property was not proved.

Since our finding of prejudicial error under the appellant's second contention necessitates a reversal of the conviction in this case, it is unnecessary for us to decide the issue raised by the appellant's first contention, which is whether adequate probable cause existed to justify the warrantless arrest of the appellant with the attendant search of his truck as an incident to that arrest or, in the alternative, whether adequate probable cause existed to justify a warrantless search of the truck itself under the doctrine of *Carroll v. United States,* 267 U. S. 132.

The appellant was convicted under an information which charged that he was unlawfully in receipt of one Westinghouse dishwasher, Model SUJ3C, of the value of $50, which had earlier been stolen from the "Orange Hunt Estates, a partnership, Herman Yanovitch, partner."

The Orange Hunt Estates is a subdivision in Fairfax County, Virginia, which was under construction during the early part of May, 1968. Mr. Yanovitch, a partner in the development firm, testified that sometime during the early part of May, 1968, there had been a theft from his development of ten SUCJDC Westinghouse dishwashers.

After making a series of observations of the appellant's garage on May 17, 1968, the Hagerstown police on May 18, 1968, stopped a truck in which the appellant was driving. They recovered from the rear of the truck two Westinghouse dishwashers, one of which became the sub-

ject of the criminal information on which this conviction was obtained.

One of the necessary elements of the crime of receiving stolen goods is that the goods, at the time of receipt, must be stolen property. *Jordan v. State*, 219 Md. 36; *McGlothlin v. State*, 1 Md. App. 256; *Cobb v. State*, 2 Md. App. 230. Since it is essential that there be proof that the dishwasher found in the possession of the appellant was stolen, the question becomes whether there was adequate evidence to establish the ownership of the Orange Hunt Estates over the Westinghouse dishwasher recovered from the appellant's truck. See *Bell v. State*, 220 Md. 75, 79.

Mr. Yanovitch testified that the dishwasher recovered from the appellant and offered in evidence by the State was one of those which had been taken from his property. He hung that identification on three separate pegs, one of which proved to be insubstantial, one of which proved to be illusory and one of which proved to be inadmissible.

The first premise on which he based his conclusion of identity was that the ten dishwashers stolen from his property each had a green panel on one side of the appliance and that the dishwasher recovered from the appellant also had a green panel on one side. It was developed at the trial, however, that the washers come from the manufacturer with attachments to receive the optional panels on one or both sides. The side panels themselves are manufactured by Westinghouse and are standard optional equipment which are attached to one or the other or both sides of a washer as the decorating demands of the receiving kitchen dictate. The coincidence of green panels being in the same position on the stolen dishwashers and on the recovered dishwasher may raise some suspicion but it is not enough to establish identity beyond a reasonable doubt.

The second peg on which Mr. Yanovitch hung his conclusion of identity turned out to be illusory. The carton in which the dishwasher recovered from the appellant

was boxed bore the crayon marking "235" upon it. Mr. Yanovitch initially concluded that this marking had been placed upon the carton by one of his employees to indicate that the appliance in question was destined for installation on lot no. 235 of the Orange Hunt Estates. Upon cross-examination, however, it was developed that since the crayoned markings were beneath a layer of transparent glue which had clearly been applied to the carton by the manufacturer, the crayoned markings had also been applied by the manufacturer to indicate a model number. Mr. Yanovitch agreed that this must have been the true state of affairs and that his earlier conclusion had been based upon supposition.

The third peg on which Mr. Yanovitch hung his conclusion of identity was both substantial and real. It was, however, inadmissible. One of the arresting officers of the appellant observed a manufacturer's serial number on one of the dishwashers on the appellant's truck. He recorded that serial number and testified to it in court. It appears likely that the records of the Westinghouse Company or of its Laurel, Maryland, distributor would disclose that that serial number was identical with the serial number of one of the dishwashers delivered by that distributor to the Orange Hunt Estates in early May, 1968. Neither witnesses nor business records from the manufacturer or the distributor were produced by the State, however. Mr. Yanovitch testified that the serial numbers of the appliances were recorded not simply upon the appliances but upon the cartons in which they were boxed. After the appliances were delivered to the Orange Hunt Estates and were unboxed, however, the cartons were destroyed. He testified that neither he nor his employees made any record of the serial numbers of the appliances received, whatsoever—either from the appliances themselves or from the cartons. Only after the theft had occurred did he make an effort to learn the serial numbers of the stolen appliances. No business records of the Orange Hunt Estates contained any listing of the serial numbers of the appliances delivered to the

partnership. Mr. Yanovitch made a telephone call to some undisclosed party at the Laurel distributorship of Westinghouse products. In the course of that telephone conversation, he was told the serial numbers of the appliances which had been sent to him. He wrote down the list. He passed on that information to the police authorities in Fairfax County, Virginia. By teletype, those authorities passed it on to all other interested police departments. Acting Police Chief Wigfield of the Hagerstown police obtained the list from the Fairfax County police. He recorded the list and passed the information on to several of the officers under his command. Various handwritten and teletyped lists of the serial numbers were introduced into evidence, all over the objection of the appellant. It is clear that whatever evidentiary frailty inhered in the information obtained initially by Mr. Yanovitch passed down to its progeny as well.

Mr. Yanovitch testified, over the objection of the appellant, that the serial number on the dishwasher recovered from the appellant corresponded with one of the serial numbers he had received in the course of his telephone conversation with the Westinghouse distributorship. It is clear that this critical fact testified to by Mr. Yanovitch was hearsay information. We do not know the identity of the out-of-court declarant or even his position within the Westinghouse complex. The information he relayed to Mr. Yanovitch was not relayed under any circumstances remotely approaching a recognized exception to the hearsay rule.

It was error to have permitted Mr. Yanovitch to pass on to the jury this hearsay evidence. In the circumstances of this case, the error was clearly prejudicial since it was the only evidence establishing a vital link in the chain of the appellant's guilt. Without it, there was no proof that the property of which the appellant was in receipt was stolen property.

*Judgment reversed; case remanded for a new trial.*